THE PEOPLE OF THE STATE OF NEW YORK ex rel. THOMAS S. CLARKSON MEMORIAL COLLEGE OF TECHNOLOGY, Respondent, against LESLIE E. HAGGETT et al., as Assessors of the Town of Potsdam, Appellants.

Third Department, March 9, 1949.

*Charles D. Campbell,* attorney (*Philip H. Nelson* of counsel), for appellants.

*Frank L. Cubley,* attorney (*Seth T. Cole* of counsel), for respondent.

BREWSTER, J. Respondents-appellants appeal from that part of a final order in a certiorari tax proceeding which cancelled their assessments on certain parcels of relator's real estate upon the ground that they were exempt from taxation.

The assessments became complete on July 1, 1946. Relator acquired its title to the properties between the inclusive dates September 15, 1945, and February 15, 1946. It appears that from the dates of acquisition to and including July 1, 1946, the only use it made of them was in repairing, remodeling, and readying them for occupancy as living quarters for members of its faculty, staff and student body.

Appellants' contention that the relator failed in its burden of proof because the evidence of the actual use it made of the premises prior to and including July 1, 1946, only may be considered, and as such it is insufficient, cannot be upheld. Extensive proofs of the relator's use of the premises after July 1, 1946, was offered and received both by relator and appellants without objection. It formed a major part of the proofs and both parties participated therein. Appellants now specifically assert this contention for the first time upon appeal. They should be bound by the procedure they themselves adopted at the trial; and, the evidence as to the subsequent use which relator made of the properties was competent as characterizing its use thereof during the tax year in question. If the subsequent use created a tax-exempt status then a use which was confined to readying them for such purpose was likewise entitled. (See *Matter of Syracuse University,* 214 App. Div. 375, 378.)

The evidence is that the exclusive use to which relator devoted said premises after they had been fitted therefor was to house students and/or members of its faculty and administration staff, and that such use was one which was incident to and in direct furtherance of an expanded program in higher education which, in common with a great many other such institutions, it undertook in coping with post-war conditions. The evidence shows that the acquisition and use which it so made of the properties was necessary to the carrying out of that program and in fact was a part thereof. There is no evidence that it related to anything else. It was not a case of choosing whether to do so as a matter of business acumen, or as a policy or plan to offer accommodation and convenience to those of its students, faculty and staff who in turn might exercise choice in availing themselves of the accommodations thus afforded. Rather, the evidence amply demonstrates that if the enlarged program was to be carried out, then to the extent of the accommodations afforded by the properties in question and the use made of them by relator, they were not only expedient but necessary. This, because of the lack of housing facilities in the vicinity. Such

use by the relator may, under the unusual and emergent circumstances shown by the evidence, be considered separate and apart from the actual use which the tenants, as personal to themselves, made of the premises. Even though the arrangement of the matter came about so that the tenants themselves only used their quarters as a home or dwelling place wherein they had all rights of castle under a relationship of landlord and tenant, still, that feature of the situation leaves undisturbed a reasonably clear view that the actual use *made by relator* was incident and necessary to its corporate purpose. Such use being, as to relator, its only one, it may be said to be the " carrying out " of its corporate purposes upon such premises. If a chartered college lacked a water system which was necessary for it to function and acquired and exclusively so used one, the real estate of which it consisted would be used for an educational purpose. I think that as to the facts before us the analogy is reasonably apt.

We do not agree that our statutory prescription whereby the real estate of an educational corporation is made exempt from taxation is the recognition of any fundamental right, or the result of an implied compact whereby the State bargained away its sovereign power to tax in consideration that the one thus freed of the burden would discharge a part of the State's function and policy in the matter of education. Our statutory history as to the tax exemption of educational institutions is substantially the same as regards the exemptions granted to religious and charitable organizations. (L. 1799, ch. 72, as republished by L. 1885, ch. 341; Vol. 4, pp. 402–414 [Weed, Parsons & Co., Albany, 1886–87]; L. 1823, ch. 262, § III; Revised Statutes, ch. 13, tit. I, § 4; L. 1896, ch. 908, § 4.) While that history gives some basis for relaxing the general rule of strict construction, still, in essence, all such exemptions are in arrest of the sovereign power of the State. There is no more ground for holding that an educational corporation receives its tax exemption upon the principle of nontaxation of public places, and as a " *quid pro quo* " etc., than a like holding as to exemptions made to religious and charitable, etc., corporations. Twenty years before the property of a school, college or incorporated academy was granted a tax exemption, such was accorded to the salary of ministers of the " Gospel." (See L. 1779, ch. 27, as republished by L. 1885, ch. 341; Vol. 1, pp. 185–190 [Weed, Parsons & Co., Albany, 1886].) As regards all such exemption statutes, it is a matter of administrative

policy, not a basic principle of our law. There is no constitutional sanction save the one added in 1938, which merely confirmed certain existing laws. (N. Y. Const., art. XVI, § 1.)

The court at Special Term was empowered to tax the costs which it awarded by the final order and on due application may direct their retaxation. (Civ. Prac. Act, § 1535.)

The order appealed from should be affirmed.

FOSTER, P. J., HEFFERNAN, DEYO and BERGAN, JJ., concur.

Order affirmed, without costs.