## EMANUEL LUTHERAN CHARITY BOARD *v.* DEPARTMENT OF REVENUE

Chester E. McCarty and Robert E. Nelson of McCarty & Swindells, Portland, represented plaintiff.

Theodore W. de Looze, Chief Tax Counsel, Department of Justice, represented defendant.

Decision for defendant rendered May 27, 1971.

CARLISLE B. ROBERTS, Judge.

The plaintiff, a charitable corporation, owns and operates the Emanuel Hospital, Portland, Oregon. It made timely application to the Department of Assessment and Taxation, Multnomah County, as required by ORS 307.162, for property tax exemption for 57 parcels of unimproved real property for the tax year 1968-69 and was denied. It appealed to the Department of Revenue (ORS 306.520) and the denial was affirmed by the Department's Order No. VL 69-320, dated August 1, 1969, whereupon it sought relief in this court (ORS 306.545).

The sole issue hinges upon the application of the exemption statute, ORS 307.130, to the stipulated facts. The plaintiff seeks an extension of the rule adopted by the Oregon Supreme Court in *Willamette Univ. v. Tax Com.*, 245 Or 342, 422 P2d 260 (1966). (In its application to the assessor for exemption, plaintiff stated: "Petitioner relies upon the case of *Willamette University vs. State Tax Commission*, 83 Adv. 797." See Defendant's Exhibit J.) The words of the controlling statute, ORS 307.130, as significant in this case, read:

> "Upon compliance with ORS 307.162 [application to be filed with the assessor], the following property owned or being purchased by incorporated literary, benevolent, charitable and scientific institutions shall be exempt from taxation:
>
> "(1) Except as provided in ORS 748.545 [relating to fraternal benefit societies], only such real or personal property, or proportion thereof, *as is actually and exclusively occupied or used in the* literary, benevolent, *charitable* or scientific *work carried on* by such institutions.
>
> "(2) Parking lots maintained solely for the use, without charge, of persons going to and from the

property exempted under subsection (1) of this section, but not if such lots are used for parking or other purposes not connected with the use and maintenance of such property." (Emphasis supplied.)

There is no question that plaintiff is a charitable institution within the meaning of ORS 307.130. Emanuel Hospital has nobly served the people of the State of Oregon since its incorporation in 1912. In 1915 it moved to its present site, opening a 60-bed hospital on Portland's east side. Over the years it has continued to grow and to expand, to meet increasing needs and new concepts in hospital services. For many years, when able, it has purchased adjacent properties to meet future requirements and necessary expansion. The testimony reveals that some of the properties under consideration in the present case may have been purchased as early as 1955 or 1956. Real impetus to such purchases, however, began with the adoption in February 1967 of a proposed "Master Plan for Emanuel Hospital," (also referred to as the "long-range development program") which was adopted in that year following several years of surveys and studies and consultation with nationally known hospital consultants. The plan adopted on February 27, 1967, provided for development of new facilities in three phases. Phase I, to be completed within one year, contemplated the construction of a nonexempt out-patient clinic building and a nonexempt professional office building; phase II, to be completed during 1970-1973, involved a long-term care facility, a new hospital building and heating plant; phase III, to be completed during 1973-1974, included a self-care unit, an auditorium, and an addition to the long-term or extended care facility.

As of the assessment date, January 1, 1968, the properties which had been acquired and which are considered in this case had had the old dwellings and other buildings removed therefrom and the basements filled (a requirement of the ordinances and regulations of the City of Portland, Article 28, entitled "Excavations, Foundations and Retaining Walls." See particularly section 7-2801, added by amendment effective June 6, 1965.) However, the property was lying idle and unimproved on the assessment date.

From the date of adoption of the Master Plan, Emanuel Lutheran Charity Board proceeded with the preparation of drawings, plans and specifications for the several proposed buildings, arranged financing, and, on a continuing basis, sought to purchase properties within the 15-block area, to supplement those which are the subject of this suit, in furtherance of its preparation to carry out the hospital's expansion program.

The first building to be placed on the lands herein considered was to be the extended long-term care facility (a 50-bed nursing home). Architects were directed in July 1967 to prepare preliminary drawings and these were completed in March 1968. Working drawings and specifications were completed on October 21, 1968, and on that date were ready to be sent out for bids. Application for federal funds was made through the Oregon State Board of Health to the United States Public Health Service and further funding was to be procured from a life insurance company. However, the working drawings were not sent to the Oregon State Board of Health until October 24, 1968. Bids were let in December 1968 and opened on February 7, 1969. The real property in question stood idle during this period.

The question before the court can be stated: Is the vacant property of plaintiff which admittedly will be exempt from taxation under ORS 307.130 when improved and occupied in accordance with its Master Plan qualified under the statute as exempt prior to the time construction of buildings actually begins?

The construction of tax exemption statutes is an oft-recurring duty of the courts. This reflects one of the most significant facts in human relationships; viz., that a particular word has different connotations for different people, including judges. The decided cases show that "actually," "exclusively," "occupied," "used" and the like, commonly found in the legislative acts granting some measure of property tax exemption to charitable organizations, are not so specific, in and of themselves, as to insure a clear, definite administratively feasible guide between exemption or taxation. (Compare *New England Hospital v. Boston*, 113 Mass 518 (1873), and *Cedars of Lebanon Hospital v. Los Angeles County*, 35 Cal2d 729, 221 P2d 31 (1950).) The varied decisions give rise to categories of "strict construction," "strict but reasonable construction" and "liberal construction," which is unfortunate. (See the dissent of Mr. Justice, now Chief Justice, O'CONNELL, in *Willamette Univ. v. Tax Com.*, *supra*, pp 349-351.) Once a "liberal construction" is adopted, where can it end, short of outright exemption? Every problem involves matters of degree, and the arguments which appear valid for taking one step will be equally compelling for taking a second. (One "liberal" court, at least, has had second thoughts and is beating a retreat. See *City & County of Denver v. George Washington L. Ass'n*, 121 Colo 470, 217 P2d 617 (1950), in its reference to *El Jebel Shrine Ass'n v. McGlone*, 93 Colo 334, 26 P2d 108 (1933).)

■ In the matter of tax exemptions, Oregon traditionally has been a "strict construction" state. The tone was set at an early date in the case of *Benevolent Society v. Kelly,* 28 Or 173, 42 P 3 (1895), a case in which a charitable corporation rented out part of its property, subjecting it to tax. At page 195, the court says:

"It is so manifestly just that all property shall bear its due proportion of the expenses of government that laws granting exemption from taxation are always strictly construed, and before such exemption can be admitted, the intent of the legislature to confer it must be clear beyond a reasonable doubt. * * *"

Again, on page 196:

"* * * Taxation is, therefore, the rule: exemption, the exception; and nothing can be held to be exempt by implication. It is only such property used for the purposes specified in the constitution as the legislature may specially exempt which can escape taxation. Exemption is not a matter of right, but a pure matter of grace; and every person or corporation claiming that his or its property, or any part thereof, is exempt must be able to show some clear constitutional or legislative provision to that effect. The legislature in its wisdom has provided that of the real property belonging to literary, benevolent, charitable, or scientific institutions incorporated within this state, such only shall be exempt from taxation as shall be actually occupied for the purposes for which they were incorporated, * * *"

See *Northwest Auto Co. v. Hurlburt,* 104 Or 398, 411, 207 P 161 (1922); *Corporation of Sisters of Mercy v. Lane Co.,* 123 Or 144, 152, 261 P 694 (1927); *Kappa Gamma Rho v. Marion County,* 130 Or 165, 177, 279 P 555 (1929); *State ex rel. Harth v. Phipps,* 136 Or

454, 459, 299 P 1009 (1931); *Poe v. State Treasurer,* 144 Or 561, 25 P2d 924 (1933); *Ballou v. Fisher,* 154 Or 548, 553, 61 P2d 423 (1936); *Title & Trust Co. v. Wharton,* 166 Or 612, 620, 114 P2d 140 (1941); *Puget Sound B. & D. Co. v. S.U.C.C.,* 168 Or 614, 621, 126 P2d 37 (1942); *Benton Co. v. Allen et al.,* 170 Or 481, 484, 133 P2d 991 (1943); *Behnke-Walker v. Multnomah County,* 173 Or 510, 521, 146 P2d 614 (1944); *Allen v. Multnomah County,* 179 Or 548, 552, 173 P2d 475 (1946) ("* * * the intent of the legislature to exempt must be clear beyond a reasonable doubt * * *"); *Methodist Book Concern v. St. Tax Com'n,* 186 Or 585, 592, 208 P2d 319 (1949); *Keyes v. Chambers, et al,* 209 Or 640, 645, 307 P2d 498 (1957); *Unander v. Pasquill et al.,* 212 Or 212, 223, 319 P2d 579 (1957); *Mult. School of Bible v. Mult. Co.,* 218 Or 19, 27, 343 P2d 893 (1959) (the "strict but reasonable construction" case); *Ore. Physicians' Serv. v. State Tax Com.,* 220 Or 487, 493, 349 P2d 831 (1960); *Unander v. U.S. Nat'l Bank, et al,* 224 Or 144, 150, 355 P2d 729 (1960); *Pac. Supply Coop. v. State Tax Com.,* 224 Or 556, 560, 356 P2d 939 (1960); *Methodist Homes, Inc. v. Tax Com.,* 226 Or 298, 307, 360 P2d 293 (1961); *Bd. of Pub., Meth. Church v. Tax Com.,* 239 Or 65, 69, 396 P2d 212 (1964) ("* * * the rule of strict construction is established in Oregon tax law.")

The Legislative Assembly has taken note of the solid and long-standing precedent of strict construction of tax exemptions, and in two instances has particularly provided otherwise. ORS 307.810 (1), relating to the "free port" exemption, has for its last sentence: "The exemption granted shall be liberally construed to effect the purposes of ORS 307.810 to 307.990." ORS 308.365, in connection with the farm use exemption, states in its first sentence: "ORS

308.345 to 308.360 shall be construed liberally to effectuate their intended purpose." (Curiously, the second sentence of the section contradicts this statement.) But the legislature has not amended the older exemptions, such as ORS 307.130, to specify a liberal construction.

For many years, the State Tax Commission (now the Department of Revenue), construing ORS 307.130 for the benefit of the tax administrators (as required by ORS 305.110), insisted that the words "actually and exclusively occupied or used in the * * * charitable * * * work" carried on by the institution required not only that the land be secured but that the improvements thereon be completed and put to the actual use of the exempt organization prior to the assessment date, or exemption must be denied. This interpretation was based on the principle of strict construction, aided by 12 Op Atty Gen 254, 255 (1924-1926). The ruling was issued with respect to a lodge (regarded as a benevolent institution) which had purchased as a site for a new lodge building a former public school building and the land on which it stood, intending to renovate and reconstruct and use the building for lodge purposes. During the time the building was under process of renovation and reconstruction, the lodge occupied another hall for its purposes but sometime during the fall of 1924, after the assessment date, upon completion of the renovations, the exempt organization moved into the building and occupied it exclusively for lodge purposes. Was it liable for taxes assessed upon the property for the year 1924? The Attorney General construed Or L 1920, § 4235, subsection (3), which exempted "[t]he personal property of all literary, benevolent, charitable and scientific institutions incorporated within this

state, and such real estate belonging to such institutions as shall be *actually occupied for the purposes for which they were incorporated.*" (Emphasis supplied.) The Attorney General said:

"It is clear that in order to be exempt the land must be 'actually occupied' for the purposes for which the organization claiming exemption was incorporated. As stated above exemption from taxation depends upon the use of the property at the time the tax is assessed.

"In Cooley, Taxation, 4th Ed., Vol. II, page 1441, section 687 it is said:

" 'An intention to use property at some uncertain time in the future, for purposes which will render it exempt from taxation under the laws of the state, does not preclude its taxation before actually used for the purpose warranting an exemption. If the use determines the right to exemption, it is the present use and not the intended use in the future which governs. It has been held that a building in the course of erection and merely intended to be used for a charitable purpose is not "actually used" for such purpose within the meaning of an exemption statute. [Citing cases.]' "

After many years, this rule was changed by the decision in *Willamette Univ. v. Tax Com., supra.* The plaintiff in that case clearly was an educational institution, eligible to claim exemption from taxation if its property came within the scope of ORS 307.130. On the assessment date, student housing units were under construction upon four parcels of realty and a fifth parcel was being used for parking purposes without charge to those going to and from parcels 1 through 4. The court noted cases in other states which were in conflict as to whether or not, under the rule of strict construction applied to exemption statutes, it must

be held that buildings in the course of construction on the assessment date could be said to be "actually occupied or used" by the exempt charity.

The court concluded (on pp 346-347):

"We prefer to follow the cases from jurisdictions which hold that a building in the course of construction is being occupied and used for the purposes of the exempt corporation as more reasonable and more in spirit with the purpose of the rule of strict but reasonable construction."

And again (on p 349):

"We are of the opinion that the better rule is found in the opinions of the courts which have carefully considered the issue and reached the conclusion that 'actually occupied and used' pertains to whether or not the premises are then being prepared to carry out purposes of the exempt charity and if they are they fall within the legislative intent."

The broad language of the quotations encouraged the plaintiff in the present case, but its plea goes far beyond the factual situation of *Willamette Univ. v. Tax Com., supra.* We are cautioned by the strong dissent of Mr. Justice O'CONNELL, referred to above, which reads (pp 349-351):

"It is conceded by the majority that tax exemption statutes are to be *strictly* construed. The qualification that a construction must also be 'reasonable' does not destroy the constructional preference for the taxability of property. It follows that if the statute is susceptible to either of two constructions, each of which is reasonable, we must accept the construction which spells liability for the taxpayer.

"In the present case the statute provides for an exemption only when the property 'is actually and exclusively occupied or used in the literary, benevo-

lent, charitable or scientific work' carried on by the qualifying institution. It stretches the meaning of the terms of the statute to describe the process of constructing a building as the actual and exclusive use or occupancy for the purposes specified. But conceding that these terms can have this meaning, it would seem that the majority would have to admit that it would be at least as reasonable to construe the language to mean that the exemption was not to be given unless the institution actually carried on some 'literary, benevolent, charitable or scientific work' on the property. (Footnote 1) [See below.] If the latter construction is reasonable, then the rule of strict construction which we have previously followed (and which I believe is sound) would require us to deny the exemption in this case.

"I suspect that the source of the majority's error can be found in the phrase 'strict but reasonable.' The addition of the qualification 'reasonable' to the strict construction rule is unfortunate. A statute must always be reasonably construed in the sense that the construction should not run counter to the purpose of the legislature. However, the word 'reasonable' is frequently used by courts to mean that construction which is the more reasonable of two feasible alternatives. This permits the court to weigh the alternatives and choose the one which in its judgment seems the most just and equitable. I believe that the majority engaged in this kind of weighing process in the present case. But the rule of strict construction prevents the court from freely making this kind of choice. The court must construe tax statutes 'most strongly against those petitioning for the exemption.' *Oregon Methodist Homes, Inc. v. Tax Com.,* 226 Or 298, 306, 360 P2d 293 (1961). Tested by this principle of construction, the claim for exemption in the present case should be denied. This court may feel that it is desirable to allow an exemption to an educational institution which, by beginning construction of a building on

its property, has taken steps to use the property for its purposes. But unless we are prepared to say that the statute cannot rationally be construed as it was in the *Cedars of Lebanon Hospital* case, we must deny the claim for exemption."

The footnote mentioned above reads:

"① The latter construction was given to similar language by the court in Cedars of Lebanon Hospital v. Los Angeles County, 35 Cal2d 729, 221 P2d 31 (1950). The court said: '* * * Such express limitation, making *use* the focal point of consideration, contemplates *actual use* as differentiated from an *intention to use* the property in a designated manner. It has been generally so held in the construction of kindred exemption laws in other jurisdictions * * *,' and again:

" '* * * The same observation may well be made in this case for regardless of the rule of strict construction here applicable, it would appear that under no theory of construction could a building in the course of erection be viewed as being used for any purpose.' (221 P2d at 39.)"

The "strict but reasonable" rule to which the dissent refers was brought into the Oregon law by the case of *Mult. School of Bible v. Mult. Co., supra.*

It is a long-established rule of statutory construction that words of common use are to be given their natural, plain and obvious meaning. *Blalock v. City of Portland et al,* 206 Or 74, 291 P2d 218 (1956); *Benevolent Society v. Kelly, supra,* p 182. Rules such as that of "strict construction" are mere aids to construction and come qualified with the rule that that sense of the words is to be adopted which best harmonizes with the context. An examination of the key words of ORS 307.130 cannot fail to impress the reader with the sense of a requirement of *present* and

*current* utilization of the property for the purposes of the institution's ultimate goals. The language is most apt for conveying that concept when the words are accepted with their accustomed meaning.

We know the goals of the plaintiff to be to heal and to teach the healing arts. This requires the utilization of buildings, doctors, nurses, and other supports and aids. With this in mind, consider the language used by the statute as defined in the Random House Dictionary of the English Language (1967 Unabridged Ed):

"*Actual*" means (1) existing in act or fact; real, as in "an actual case of treason"; actual expenses; an actual hardship. (2) Existing now; present; current; as in "the actual position of the moon."

The derivative, "*actually*," means "as an actual or existing fact; really."

"*Occupy*" means to take or fill up, to engage or employ, to take possession and control, to hold, to be a resident or tenant of, to dwell in.

"*Use*" means (1) to employ for some purpose; to put into service; to make use of (as "to use a knife"). (2) To avail oneself of; to apply to one's own purposes, as to "to use the facilities."

These words cannot be easily adopted with reference to an idle piece of land which, at some time in the future, is to be utilized to carry on the work of the exempt institution. The legislature knows how to grant flat exemptions from taxation; see ORS 307.320 and 307.325. It is patent that this has not been done under ORS 307.130. The property of nongovernmental charitable institutions must conform to certain prerequisites, no matter how worthy the institution's purposes may be. Matters of degree become important and lines must be drawn, if the legislative intent is

to be fulfilled. The legislature, under ORS 307.130, intends that the area of exemption cease at a particular point, and that point must be discovered by the court, if possible. *Willamette Univ. v. Tax Com., supra,* carries us to a specific bricks-and-mortar point: student housing units were under construction on four parcels and a fifth was used for parking purposes, without charge, for those going to and from the four parcels. The case gives no clues as to how much further a plaintiff should expect to go under the "strict but reasonable" rule of construction.

There is no doubt in the present case that the property in dispute has been acquired, that the general plan to be used has been formulated, that old buildings have been razed and basements filled and zone changes obtained, the plans for financing have been formulated and approved, that the architects have gone through the stages of preliminary sketches, schematics, working drawings, and final, corrected, approved drawings as to certain improvements. But if what has been done here can be approved to bring the property within the provisions of ORS 307.130, there is every logical reason to suppose that, step by step, the day will come when bare land acquired under some hazy or rudimentary scheme, or as a hedge against inflation, must be regarded as exempt, upon application being made therefor. The plaintiff, in its Memorandum of Law (filed on October 27, 1970), pages 2 to 4, quotes from *Carney v. Cleveland City School District Public Library,* 169 Ohio St 65, 157 NE2d 311 (1959):

> "It is unrealistic to differentiate between those instances where the property acquired for an intended public use is under construction and where construction has not yet begun.
> "It is the purpose and intent of the tax exemp-

> tion statutes with which we are concerned that the funds of the exempt entity be devoted exclusively to the benefit of the public for that particular use, and to so differentiate and deny an exemption to property acquired for such use but not presently so used would defeat the purpose of the exemption statutes."

This argument is equally valid at any step of the enterprise. But the Oregon legislature has not provided for an outright exemption.

It is essential, for good tax administration, that guideposts be set up and lines so drawn that tax administrators, assessors, appraisers and taxpayers will be able to act with reasonable certainty under the statute. The act approved in *Willamette Univ. v. Tax Com., supra,* provides for a sufficient guide; that is, there was a patent physical change in the property to be exempt by starting actual construction of an improvement, to be used and occupied for the purposes for which the exempt organization was established. Anything less, because of unsettled, inchoate, obscure or latent aspects (from the standpoint of the assessor and tax administrators) would be futile and increase litigation.

■ This court does not interpret ORS 307.130 as an inducement to an exempt organization to "lay away" property. The undisputed testimony in the case at bar showed that parts of the land would not be utilized under the Master Plan for seven years. Lack of certainty, inherent in any plan, is illustrated in the parties' stipulation (Plaintiff's Exhibit 9), pp 12-13:

> "Due to the economic situation within the United States and the request of the President of the United States that capital expenditures be deferred, the action on the urban renewal project has been

slowed, and to this extent, through no fault of plaintiff, funds for the development of the urban renewal portion of plaintiff's Master Plan * * * have been deferred. * * *"

A reading of the case of *City & County of Denver v. George Washington L. Ass'n, supra,* with its comments on the *El Jebel Shrine* case, *supra,* is again brought to mind. The court noted that it had allowed El Jebel an exemption 16 years before, and then said:

"* * * Today we cannot be blind to the fact that the property there involved * * * has remained through many years unused for any purpose, the building still incomplete, the property exempt from taxation and the original intent long obscured." (217 P2d at 619.)

While it cannot be believed that this would happen in the case of Emanuel Hospital, whose every effort we may regard as commendable, not all of the hundreds of corporations presently exempt in Oregon under ORS 307.130 have such a history.

■ Under ORS 307.130, parking lots are exempt only if the areas they serve are exempt. Designation as a parking lot, for use without charge, is essential, but this is not enough if no exempt facility can reasonably be served thereby because of remoteness from the facility. (In the present case, it appears that the exemption has been extended to some areas which are future building sites but on the assessment date were in convenient use as parking sites for currently active installations. This is lawful.)

The defendant's Order No. VL 69-320 is affirmed.

The splendid standard of professional effort exerted by both counsel in this case was gratifying and most helpful to the court.