CARLISLE B. ROBERTS, Judge.
 

 Plaintiffs appealed to this court from defendant’s Order No. VL 77-507, issued November 9, 1977. In
 
 *[123]
 
 that order, the department found that the Clackamas County Assessor had properly removed certain land owned by plaintiffs from its unzoned farmland classification because the land was not currently being used as farmland and thus was disqualified for special assessment for the 1977-1978 tax year, under ORS 308.370(2).
 
 *
 

 The subject property consists of 79.3 acres of unimproved land in Clackamas County, Oregon, purchased by plaintiffs in 1973 for $55,000. Most of the subject property can be described as a hill with a steep slope. Only seven acres in the southwest comer of the property, across a road from the remaining 72 acres, are level. Plaintiffs testified that they acquired the property with the primary intent to graze cattle, as had been done by their predecessor. They further testified that, because of the steep slope of the land, it was unsuitable for any other farm use. The level seven acres in the southwest portion were used successfully to grow hay, with some hay harvested for feed and some for sale.
 

 In May 1976, plaintiffs purchased two additional parcels of land (Tax Lot 1000 and Tax Lot 1400) totaling about 128 acres, improved by a farmhouse and outbuildings. This property is south of and contiguous to the subject property. The assessor did not disqualify these tax lots from their special assessment status as farm use property. Although ORS 308.380(2) requires the county assessor to "consider” all the farmlands of the operator "that are part of one farming unit,” insufficient testimony was adduced in this case to make clear the operational relationship of the 1973 and the 1976 purchases.
 

 
 *[124]
 
 Soon after they purchased the subject property in 1973, plaintiffs discovered much of the land was infested with tansy ragwort, a persistent, noxious weed, fatal to livestock.
 
 See Taylor v. Dept. of Rev.,
 
 6 OTR 496 (1976). The legislature has declared tansy ragwort to be a public nuisance, to be "detected, controlled and, where feasible, eradicated on all lands in this state, * * ORS 452.615.
 

 In 1973, upon the recommendation of a county extension agent and under the direction of the county extension service, plaintiffs began a program to control the tansy through use of the cinnabar moth caterpillar. These moths, during their caterpillar stage, literally devour the tansy plants to the roots, according to the plaintiffs’ testimony. The cinnabar moth program was not too successful in the first years. The county extension agent believed that this was due, primarily, because plaintiffs’ cattle, while grazing on the subject property, dislodged and trampled many of the caterpillars. Pursuant to the advice of the county extension agent, the plaintiffs removed their cattle (allegedly 35 to 40 head) from the subject property in June or July 1976. The agent recommended that plaintiffs not place any livestock on the tansy-infested area until the caterpillars had the weed under control.
 

 In 1976, plaintiffs conferred with commercial crop sprayers respecting the possibility of controlling the tansy ragwort through spraying the area by airplane. The commercial sprayers refused the work because of their fear of damage to neighbors’ crops and yards. Plaintiffs then undertook handspraying of the tansy but stopped because of the time and effort involved and because the spray killed the cinnabar moth caterpillars.
 

 On August 2,1976, an appraiser for the Clackamas County Assessor’s office inspected the subject property. He noticed that the property was infested with tansy and found no evidence of pasturing; e.g., livestock droppings and trails. A second appraiser for the
 
 *[125]
 
 county viewed the property in November 1976, walking through much of the acreage. This appraiser saw no evidence of any livestock and noted that the fencing was in poor, neglected condition. As a result of these inspections, the county assessor notified plaintiffs, in a letter dated January 11, 1977, that the subject property was being removed from farm use assessment status beginning with the 1977-1978 tax year, pursuant to ORS 308.395(1).
 

 The sole issue before this court is whether the farm use assessment for the 1977-1978 tax year was properly removed by the assessor pursuant to ORS 308.390(1) (c).
 

 Under the Oregon statutory scheme for farm assessments, realty engaged in "farm use” is to be assessed, not on the basis of its "highest and best use,” but, instead, at its "farm use” value. "Farm use” is defined in ORS 215.203(2)(a):
 

 "(2)(a) As used in this section, 'farm use’ means
 
 the current employment of land
 
 including that portion of such lands under buildings supporting accepted farming practices
 
 for the purpose of obtaining a profit in money
 
 by raising, harvesting and selling crops or by the feeding, breeding, management and sale of, or the produce of, livestock, poultry, fur-bearing animals or honeybees or for dairying and the sale of dairy products or any other agricultural or horticultural use or animal husbandry or any combination thereof. * * *” (Emphasis supplied.)
 

 This definition is explicitly incorporated by reference into ORS 308.370(2), which provides, upon application by the taxpayer pursuant to ORS 308.375, for farm use assessment for qualifying realty located in other than an "exclusive farm use zone.” Plaintiffs’ original application for 1973 was timely but the assessor took steps to disqualify plaintiffs’ 1973 land purchase for the special farm use assessment for the 1977-1978 tax year, because he concluded that the land, beginning in 1976, was no longer currently employed in farm use.
 

 
 *[126]
 
 It is possible that the subject property’s seven acres of flatland, suitable for raising hay and, apparently, used for that purpose as late as 1977-1978, should have been continued in farm use by the county assessor, but the record is not sufficiently clear in this respect to justify a finding by the court. The plaintiffs, husband and wife, were their own and only witnesses at the trial of this suit. A Mr. Calhoun allegedly gave some oversight to the operation on behalf of the owners. Unfortunately, he did not testify, and the owners’ testimony showed unfamiliarity with the details of the farm operation and its bookkeeping.
 

 The court finds, on the preponderance of the evidence, that the county assessor acted properly in removing the subject property from its "farm use” status for the 1977-1978 tax year, including the seven acres of flatland. The purpose of placing the cinnabar moth on the subject property was to attempt to control the tansy ragwort, and not to employ the land currently "for the purpose of obtaining a profit in money.” ORS 215.203(2)(a). Although it can be argued that plaintiffs’ laudable efforts may restore the subject property to profitable
 
 future
 
 activities, the statutory language requires
 
 current ase
 
 for profits, with certain explicit statutory exceptions. ORS 215.203(2)(b) lists four situations which are statutorily deemed to constitute "current employment” of land for farm use, which otherwise would not meet the definitions of subsection (2)(a). However, plaintiffs’ use of the subject property does not fall within any of the categories listed in ORS 215.203(2)(b). Plaintiffs’ problem is one never contemplated by the drafters of the statute. Following the rule that statutory exemptions (or partial exemptions, as in this case) are to be strictly construed, the court has no power to order relief for the plaintiffs under the facts of this case.
 
 See cases
 
 cited in
 
 Emanuel Lutheran Char. v. Dept. of Rev.,
 
 4 OTR 410, 415-416 (1971),
 
 aff’d,
 
 263 Or 287, 502 P2d 251 (1972). Although the imposition of additional taxes upon the plaintiffs for
 
 *[127]
 
 1977-1978 required by ORS 308.395(1) appears onerous to the court (as well as to plaintiffs), their hardship is attributable to an act of nature for which the farm use statute makes no provision and gives no relief. It was argued that the plaintiffs were taking the steps they deemed wise to salvage their land for future agricultural purposes and that legislative policy should protect them from loss of farm use benefits under the circumstances. However, the court must declare what the legislature has done and not what an omniscient legislative draftsman might well have done.
 
 Sunshine Dairy v. Paterson et al.,
 
 183 Or 305, 316, 193 P2d 543, 548 (1948);
 
 Fullerton v. Lamm, 177
 
 Or 655, 670-671, 163 P2d 941, 947-948, 165 P2d 63 (1946).
 

 Defendant’s Order No. VL 77-507 is affirmed. The parties shall bear their own costs.
 

 *
 

 In their complaint, as a second issue, plaintiffs also pleaded that: "The market value given to the premises by the assessor [$90,820] is excessive and actually should not exceed the price paid by Plaintiffs * * * $55,000.00.” However, this issue was not raised before the county board of equalisation or before the Department of Revenue and, at trial, was stricken from the suit because of plaintiffs’ failure to exhaust their administrative remedies.
 
 Erwin v. Dept. of Rev. et al,
 
 7 OTR 539 (1978).