IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| LAUREL HILL CENTER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 140377C |
| | ) | |
| v. | ) | |
| | ) | |
| LANE COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **FINAL DECISION** |

This Final Decision incorporates without change the court's Decision, entered February 25, 2015. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* TCR-MD 16 C(1).

Plaintiff appeals Defendant's denial of its property tax exemption application for the 2014-15 tax year for property identified as Account 1589041 (subject property).

A trial was held by telephone on January 26, 2015. Diane Keller (Keller), Director of Operations and an employee of the taxpayer regularly employed by the taxpayer in tax matters, appeared on behalf of Plaintiff.[1] Lori Halladey (Halladey), Exemption Specialist, Lane County Assessor's office, appeared and testified on behalf of Defendant. Plaintiff's Exhibits 1 through 10 were received without objection. Plaintiff's Exhibits 1 and 2 were admitted over Defendant's objection. Defendant's Exhibits A and B were received without objection.

## I. STATEMENT OF FACTS

The parties agree that Plaintiff is a qualifying nonprofit charitable organization. A document submitted by Plaintiff describes Plaintiff's mission as follows:

/ / /

---

[1] Minutes from the April 16, 2014, Board of Directors stated Keller's title. (Ptf's Ex 2 at 1.)

"Laurel Hill Center's mission is to assist individuals with a psychiatric disability to live, learn and work in the community of their choice. [Plaintiff] ha[s] a 20 year history of successfully assisting individuals to transition from higher levels of mental health services into the community."

(Ptf's Ex 4 at 2.) The mission statement further explained that "[t]he utilization of transitional housing as a component of the step down plan is essential to" reducing overall mental health costs, increasing opportunities to assess program participant's independent living skills, and creating long-term individualized plans for independent living. (*Id.*)

On June 12, 2014, Plaintiff purchased a five-plex apartment building located at 1024 R Street, Springfield, Oregon, for $445,000. (*See* Def's Ex B at 1; Ptf's Ex10 at 1.) Plaintiff bought that building to expand its transitional housing program. It is that building that is the subject of this appeal.

The parties agreed at trial, during Defendant's presentation of its case in chief, that Plaintiff's program participants (individuals receiving services from Plaintiff) began moving into the subject property on September 15, 2014.

The parties agree that Plaintiff applied for property tax exemption for the subject property under the provisions of ORS 307.130. Halladey testified that Plaintiff's application for exemption was filed August 27, 2014. Keller testified that that sounded like the date the exemption application was filed.[2] Defendant denied Plaintiff's application by letter dated September 29, 2014. (Ptf's Compl at 2; Def's Ex A.) The stated reason for the denial was that "the prior owner's tenants we[re] in use of the property and [Plaintiff] was not using the property as of July 1, 2014." (Ptf's Compl at 2; Def's Ex A.)

Plaintiff has appealed Defendant's denial of its exemption application. Plaintiff initially asserted that the property qualified for exemption because Plaintiff was using the subject

---

[2] Neither party exchanged or offered Plaintiff's exemption application as an exhibit.

property "for the stated exempt purpose" before the end of the "exemption year," which Plaintiff identified in a letter attached to its Complaint dated September 29, 2014, as "July 1, 2014 – June 30, 2015." (Ptf's Compl at 3). Plaintiff's Complaint was filed October 6, 2014. (*Id*. at 1.) At trial, Plaintiff modified its position, arguing that it was making sufficient use of the property by June 30, 2014, so as to qualify for property tax exemption. Plaintiff contends the property was being used and occupied in conformity with ORS 307.130 because the property was in "planning and development" from the date Plaintiff purchased it, and even before that date, as explained below.

Keller testified that at the time of Plaintiff's purchase (June 12, 2014,) the subject property was being used and operated as a for-profit commercial apartment building, and was occupied by the former owner's tenants. The parties agree that the subject property was not receiving property tax exemption at the time of Plaintiff's purchase.

Keller testified that Plaintiff purchased the subject property to expand its transitional housing program, and that a decision was made to give the existing tenants 60 days to vacate the premises before Plaintiff would begin necessary renovations of the building.

Plaintiff submitted a letter dated December 17, 2014, written to its Housing Manager Gerri O'Rourke, by Jim Straub (Straub), Acorn Property Management, a property management company regularly employed by Plaintiff to help Plaintiff manage its various housing properties. (Ptf's Ex 9 at 1.) That letter confirms Plaintiff's purchase of the subject property and states in part that Straub "performed walk-through inspections with Laurel Hill Center staff *during the process*[3] to determine what repairs/upgrades would be required." (*Id*.) (emphasis added). The letter then states that "Acorn recommended that Laurel Hill Center wait to begin the repairs until

---

[3] Straub's reference to the walk-through "during the process" presumably refers to Plaintiff's process of purchasing the subject property.

the present tenants had vacated the premises." (*Id*.) That letter supports Keller's testimony that Plaintiff had decided to give the existing tenants 60 days from the date of Plaintiff's June 12, 2014, purchase to vacate, meaning that renovations to the subject property would not begin until on or about August 11, 2014.

Plaintiff submitted a proposal for the replacement of the subject property's roof. (Ptf's Ex 10.) The proposal was dated May 13, 2014, approximately one month before Plaintiff purchased the subject property. (*Id*.) The total proposed cost (bid) for the new roof was $10,325. (*Id*.)

Plaintiff's Exhibit 4 is a letter dated May 13, 2014, written on Plaintiff's stationery over the signature of Shawn Murphy (Murphy), Laurel Hill Center's Executive Director. (*Id*.) That letter states that Murphy was writing "in response to the RFP for AMHI projects and proposals.[4]" (*Id*.) Plaintiff introduced that letter as additional support for its position that it was taking positive steps toward expanding its housing program prior to the purchase of the subject property on June 12, 2014.

Plaintiff submitted other documents intended to show that it was purchasing the subject property for a specific purpose and had been planning to do so for several months prior to the purchase of the subject property in June 2012.

Plaintiff's Exhibits 1 through 3 are minutes from Board of Directors (Board) meetings held March 19, 2014, April 16, 2014, and June 18, 2014. Those minutes indicate, among other things, that by March 19, 2014, Plaintiff was

/ / /

/ / /

---

[4] Request for Proposal (RFP); Adult Mental Health Initiative (AMHI).

> "exploring the possibility of adding new housing to accommodate the expansion of [one of its housing programs] to serve 100 participants over the next 12 months [] [after being] approached by the county who expressed interest in [Plaintiff] increasing [its] transitional housing units to address the unmet demand for safe, affordable housing for those transitioning from higher levels of care."

(Ptf's Ex 1 at 1.) The March 19, 2014, minutes also stated that Plaintiff's board members "spoke of the funds [Plaintiff] has in reserves and how they would like to use it in some type of service to help [Plaintiff] grow." (*Id*. at 2.) Board minutes from the meeting the following month (April 16, 2014) again refered to Plaintiff's desire and intention to expand its transitional housing. (Ptf's Ex 2.) Those minutes stated that one of Plaintiff's board members discussed the fact that Plaintiff "is sitting on cash reserves that could be used to help participants," and that another board member "made a motion for [Plaintiff] to purchase property for use as transitional housing, using up to $500,000 of [Plaintiff's] funds, contingent upon a successful property inspection and final board approval." (*Id*. at 2.) That motion was seconded and passed by the Board at the April 16, 2014, Board meeting. (*Id*.) Finally, the June 18, 2014, Board minutes stated that "the closing went through for the [subject] property," and that the Board had "unanimously approved the purchase of the [subject property] for transitional housing needs via emails dated June 6-9, 2014." (*Id*.)

Plaintiff's Exhibits 4 through 8 pertain to contract negotiations between Plaintiff and representatives from Lane County Health & Human Services regarding government funding for Plaintiff's transitional housing program expansion. Those documents included certain information regarding Plaintiff's financial position and Lane County's contractual funding agreement to pay for at least some of the costs involved in the expansion of Plaintiff's transitional housing program, which included assessments and training.

/ / /

As indicated above, Plaintiff's Exhibit 4 was a letter regarding a proposal submitted by Plaintiff for community funding for its AMHI project. (Ptf's Ex 4 at 1.) Plaintiff's Exhibit 5 contains two amendments to a July 1, 2014, contract (not offered or submitted into evidence) between Plaintiff and Lane County that provide for additional county funding for Plaintiff's housing program operations. Plaintiff's Exhibits 6 through 8 were additional correspondence between Plaintiff and the County regarding Plaintiff's program services.

## II. ANALYSIS

A.    *Issue*

The issue before the court is whether Plaintiff met the legal requirements for exemption under ORS 307.130 for the 2014-15 tax year.

B.    *The Law*

ORS 307.130[5] reads in pertinent part:

> "(2) * * * the following property owned or being purchased by * * * incorporated literary, benevolent, charitable and scientific institutions shall be exempt from taxation:
>
> "(a) * * * only such real or personal property, or proportion thereof, as is *actually and exclusively occupied or used* in the literary, benevolent, charitable or scientific work carried on by such institutions."

(Emphasis added.)

Oregon courts look to answer two main questions in determining whether property falls within the "charitable institutions" exemption of ORS 307.130. First, whether the entity seeking the exemption is a "charitable institution," and second, whether the property is "actually and exclusively occupied or used in the * * * charitable * * * work carried on" by the organization. The parties agree that Plaintiff is a charitable institution and therefore meets the first

---

[5] The court's references to the Oregon Revised Statutes (ORS) are to 2013.

requirement. This case focuses solely on the second question; whether the subject property was "actually and exclusively occupied or used" for Plaintiff's exempt purposes on the applicable date, which in this instance was June 30, 2014. ORS 307.130(2)(a) and Oregon Administrative Rule (OAR) 150-307.130-(A)(2)(d).

OAR 150-307.130-(A)(2)(d) provides that "[a]ny organization claiming the benefit of property tax exemption in subsection (2)(a), (b), or (c) under ORS 307.130 must have *possession of and be using the property* for the stated exempt purpose by June 30 of the year in which the exemption is claimed." (Emphasis added.) That is the crux of this appeal.

"It has long been the rule in Oregon that property is subject to taxation unless specifically exempted." *Living Enrichment Center Properties v. Dept. of Rev.*, 19 OTR 324, at 328 (2007) (quoting *Christian Life Fellowship, Inc. v. Dept. of Rev.*, 12 OTR 94, 96 (1991) (citation omitted)). Exemption provisions "should be strictly construed in favor of the state and against the taxpayer." *North Harbour Corp. v. Dept. of Rev.* (*North Harbour*), 16 OTR 91, 94 (2002), (quoting *Mult. School of Bible v. Mult. Cty.* (*Mult. School of Bible*), 218 Or 19, 27, 343 P2d 893 (1959)). The court in *North Harbour* explained that "[s]trict but reasonable construction does not require the court to give the narrowest possible meaning to an exemption statute." *North Harbour,* 16 OTR at 95. That rule of construction "requires an exemption statute be construed reasonably, giving due consideration to the ordinary meaning of the words of the statute and the legislative intent." *Id.* (citing *Mult. School of Bible*, 218 Or at 27-28).

C.    *Defendant's Exemption Denial*

Defendant denied Plaintiff's application based on a determination that Plaintiff was not in possession of and using the property by June 30, 2014. Defendant's exemption application denial letter states in part that Plaintiff's claim was denied "because the prior owner's tenants

[were] in use of the property and [Plaintiff's] organization was not using the property as of July 1, 2014." (Def's Ex A at 1.)

D.    *Plaintiff's Position*

It is Plaintiff's position that the subject property was in "planning and development" before June 30, 2014. Plaintiff argues that, at the least, the property was in that planning and development phase from the date of Plaintiff's June 12, 2014, purchase. Keller asserts that Plaintiff's planning and development activity in fact goes back to March 19, 2014, when the Board began discussing its intent to expand its housing program. (Ptf's Ex 1 at 1-2.) Furthermore, Plaintiff asserts that its contract negotiations with county mental health organizations prior to and shortly after the acquisition of the subject property on June 12, 2014, also show possession and use of the subject property in terms of planning and development. (S*ee* Ptf's Exs 4, 6.) Plaintiff's also points to its receipt of a proposal from Evergreen Roofing dated May 13, 2014, (approximately one month prior to Plaintiff's purchase) for the replacement of the roof on the subject property as further evidence of planning and development before June 30, 2014. (Ptf's Ex 10.) Finally, Plaintiff introduced a letter from its property management company as evidence showing that it worked with that company during the period of time Plaintiff began contemplating purchase of the subject property. (Ptf's Ex 9.) That letter shows that a member of Plaintiff's property management company toured the subject property prior to Plaintiff's purchase. (*Id*.)

E.    *Defendant's Position*

Defendant's position is simple; the statute and corresponding administrative rule in this case required actual use of the subject property before July 1, 2014, and Plaintiff was not actually

/ / /

using the property until after that date. Defendant further argued that planning to use property is not sufficient; only portions of property actually being used qualify for exemption.

F.      *Relevant Case Law*

The goal posts in this case are set by *Willamette Univ. v. Tax Com.* (*Willamette University*), 245 Or 342, 422 P2d 260 (1966) and *Emanuel Lutheran Char. v. Dept. of Rev.* (*Emanuel Lutheran*), 4 OTR 410 (1971), *aff'd* 263 Or 287, 502 P2d 251 (1972).

In *Willamette University*, the court construed ORS 307.130 to allow an exemption for buildings that were under construction but not yet completed, despite the fact that no qualifying use was actually underway. *Willamette University*, 245 Or at 349. The Oregon Supreme Court noted that "the admitted facts * * * disclose that at the time of assessment student housing units were under construction on parcels 1 through 4 and parcel 5 was being used for parking purposes without charge to those going to and from parcels 1 through 4." *Id*. at 344. The Oregon Tax Court found that the four buildings being erected by the university for student housing on parcels 1 through 4 were one-fourth to one-third complete on the assessment date of January 1, 1963. *Willamette University v. Comission*, 2 OTR 246, 247 (1965). It was that set of facts that led the Oregon Supreme Court to rule that the statutory term " 'actually occupied and used' pertains to whether or not the premises are then being prepared to carry out purposes of the exempt charity and if they are they fall within the legislative intent." *Willamette University*, 245 Or at 349. The operative words of ORS 307.130 in place when the Oregon Tax Court and Supreme Court ruled in *Willamette University* are identical to the language appearing in the 2013 version of the statute applicable in this case.

In reaching its conclusion that buildings being constructed but not yet used for the intended purpose of housing university students nonetheless qualified for exemption under

ORS 307.130, the Oregon Supreme Court rejected the tax commission's contention that "actual physical occupancy or use * * * must exist before the right of exemption may attach." *Id*. at 344. The Court noted that the general principle of law providing that property tax exemption statutes "are to be strictly construed" is "secondary to the rule that the intention of the legislature must be the primary objective sought." *Id*. (citing *Corbett Inves't Co. v. State Tax Com.*, 181 Or 244, 181 P2d 130 (1947)). The court then cited *Multnomah School of Bible* for the rule that " '[e]xclusively used' is primary use made of the property, and its use for exemption purposes is measured by the reasonable applicability of the property to carry out the purposes of the exempt taxpayer." *Willamette University*, 245 Or at 344-345. Turning to legislative intent, the Court concluded that, in adopting ORS 307.130, the legislative purpose "was primarily to aid the 'incorporated literary, benevolent, charitable and scientific institutions' by relieving them of a tax burden and thus aiding them to this extent in carrying on a purpose deemed of benefit to the public good." *Id*. at 345.

The Court next addressed what it deemed "[t]he exact question" presented by the appeal, which was "when is property owned by the charitable institutions said to be 'actually and exclusively occupied or used in * * * work carried on by such institutions?" *Id*. The Court looked at cases from Oregon and other states going back as far as 1873 ruling for and against taxpayers seeking exemption for buildings in the course of construction or recently completed but not yet occupied or used for the charitable intended purpose. Noting an apparent shift in the case law, primarily if not entirely from other jurisdictions, the *Willamette University* Court stated that it "prefer[ed] to follow the cases from jurisdictions which hold that a building *in the course of construction is being occupied and used* for the purposes of the exempt corporation as more

/ / /

reasonable and more in spirit with the purpose of the rule of strict but reasonable construction."
*Id*. at 346-347 (emphasis added).

Of particular note to this case is a case discussed by the Oregon Supreme Court in
*Willamette University* that was decided by a New York court. The New York case was *People
ex rel. Thomas S. Clarkson Mem. Coll. of Tech v. Haggett* (*Clarkson*), 274 AD 732 (1949), *aff'd
on appeal*, 300 NY 595, 89 NE2d 882 (1949). In *Clarkson*, the "buildings * * * had been
purchased and were *in the process of remodeling*, but were not occupied by anyone," and the
court granted the exemption, focusing on the particular words of the exemption statute, "actual
use," and concluding that " '[i]f the subsequent use created a tax exempt status then a use which
was confined to readying them for such purpose was likewise entitled." *Willamette University*,
245 Or at 347, citing *Clarkson*, 274 AD at 734 (emphasis added).

*Clarkson* is distinguishable because in that case the taxpayer had purchased the property
*and* begun remodeling whereas in the instant appeal Plaintiff had only recently purchased the
property and had not yet begun any remodeling until after the June 30, 2013, deadline provided
in the administrative rule, OAR 150-307.130-(A)(2)(d).

A case similar to *Clarkson*, decided some 22 years later by the Oregon Tax Court and
affirmed on appeal by the Oregon Supreme Court is *Emanuel Lutheran*. In denying exemption,
the tax court in *Emanuel Lutheran*, looked at key words in the exemption statute here at issue,
ORS 307.130, specifically, "actual," "occupy," and "use," and noted the following:

> "These words cannot be easily adopted with reference to an idle piece of
> land which, at some time in the future, is to be utilized to carry on the work of the
> exempt institution. The legislature knows how to grant flat exemptions from
> taxation; see ORS 307.320 and 307.325. It is patent that this has not been done
> under ORS 307.130. *The property of nongovernmental charitable institutions
> must conform to certain prerequisites*, no matter how worthy the institution's
> purposes may be. *Matters of degree become important and lines must be drawn*,
> if the legislative intent is to be fulfilled. The legislature, under ORS 307.130,

intends that the area of exemption cease at a particular point, and that point must be discovered by the court, if possible. *Willamette Univ. v. Tax Com.*, supra, carries us to a specific bricks-and-mortar point: *student housing units were under construction* on four parcels and a fifth was used for parking purposes, without charge, for those going to and from the four parcels."

*Emanuel Lutheran*, 4 OTR at 422-423 (emphasis added).

The taxpayer in *Emanuel Lutheran* operated a hospital in Portland and over the "years, when able, * * * purchased adjacent properties to meet future requirements and necessary expansion." 4 OTR at 412. The hospital adopted a master plan for development in 1967 "following several years of surveys and studies and consultation with nationally known hospital consultants." *Id*. That plan called for three phases of development to be completed over the course of several years, the first phase of which "contemplated the construction of a nonexempt out-patient clinic building and a nonexempt professional office building." *Id*. The hospital had removed several "old dwellings and other buildings" from that property and filled in the basements as of the applicable assessment date for that case, which was January 1, 1968. *Id*. at 413. This court noted that "the property was lying idle and unimproved on the assessment date." *Id*. The hospital "proceeded with the preparation of drawings, plans and specifications for the several proposed buildings" called for under the three phases of development, had "arranged financing" and continued to seek purchasing additional properties in the area. *Id*. "Architects [had been] directed in July 1967 to prepare preliminary drawings [for a 50-bed nursing home, which were] completed in March 1968." *Id*.[6]

On appeal, the Oregon Supreme Court affirmed the tax court, ruling that it was "committed to the rule that tax exemption statutes are to be construed strictly but reasonably."

---

[6] While it is not entirely clear from the tax court's recitation of the facts, it appears that the 50-bed nursing home was part of the second phase of development, which was to occur between 1970 and 1973. *See Emanuel Lutheran Charity*, 4 OTR at 412.

*Emanuel Lutheran*, 263 Or at 291 (1972). The court then stated that "[s]trict but reasonable means merely that the statute will be construed reasonably to ascertain the legislative intent, but in case of doubt will be construed against the taxpayer." *Id.*

The important language from *Emanuel Lutheran*, for purposes of this case, is that the court refused to extend its holding in *Willamette University*, discussed above ("constru[ing] ORS 307.130 to allow an exemption for buildings which were under construction but not yet completed"), ruling instead that

> "[b]y requiring that exempt property be actually occupied for charitable or other exempt purposes *the legislature must have meant something more than mere ownership or even ownership with an intent to put the [property] to an exempt use in the future*. Actual occupancy must mean as a minimum that the land be occupied by a building under construction."

*Emanuel Lutheran,* 263 Or at 291-92 (emphasis added).

The court finds that, as to the matter presently before it, *Emanuel Lutheran* and *Clarkson*, are more on point. Unlike *Willamette University*, where the taxpayer had begun construction of student housing which, once completed, clearly qualified for exemption under ORS 307.130, Plaintiff in this case was not actually using or occupying the subject property by June 30, 2014. As in *Emanuel Lutheran*, Plaintiff had undertaken preparatory steps to remodel the subject property once the tenants residing in the building on the date of acquisition and for 60 days thereafter vacated the premises. Plaintiff had discussed the matter with its Board, walked through the property with its management company, gotten a bid approximately one month before the date of acquisition for the installation of a new roof, and worked with the county mental health authorities on obtaining financing to expand its housing program. However, the property was not being "actually and exclusively occupied or used" by Plaintiff by June 30, 2014.

III.  CONCLUSION

Having carefully considered the matter, the court concludes that the subject property,

Account 1589041, was not being actually and exclusively occupied or used by Plaintiff by the

applicable date of June 30, 2014, and as such, does not qualify for property tax exemption for the

2014-15 tax year.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ____ day of March 2015.

_____
DAN ROBINSON
MAGISTRATE

***If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.***

***Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.  TCR-MD 19 B.***

***This document was signed by Magistrate Dan Robinson on March 17, 2015.  The court filed and entered this document on March 17, 2015.***