Submitted September 7, affirmed December 30, 1966

# WILLAMETTE UNIVERSITY *v.* STATE TAX COMMISSION

422 P. 2d 260

Robert Y. Thornton, Attorney General, Donald C. Seymour and Carlisle B. Roberts, Assistant Attorneys General, Salem, for appellant.

Roy Harland, Salem, for respondent.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

PERRY, J.

This is an appeal by the State Tax Commission from a decision of the Oregon Tax Court granting to the plaintiff Willamette University its claim of exemption from ad valorem taxes on five parcels of land which the plaintiff owned on January 1, 1963, the date the property was assessed. *Willamette University v. Tax Commission,* 2 OTC Adv Sh 261.

The admitted facts disclose that plaintiff is an institution entitled to the exemption from taxation granted by ORS 307.130.

The admitted facts also disclose that at the time of assessment student housing units were under construction on parcels 1 through 4 and parcel 5 was being used for parking purposes without charge to those going to and from parcels 1 through 4.

The sole question presented by this .appeal is whether this property of plaintiff, which when completed and occupied is admittedly exempt from taxation under ORS 307.130, qualifies under the statute as exempt during the time the buildings are in the course of construction.

ORS 307.130, so far as applicable, is as follows:

"(1) * * * only such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work carried on by such institutions."

■ It is the contention of the commission that actual physical occupancy or use, as contrasted with intended physical occupancy or use, must exist before the right of exemption may attach. The commission relies upon a general principle of law,—that statutes providing exemption from taxation are to be strictly construed. This general principle however has been said to be secondary to the rule that the intention of the legislature must be the primary objective sought. *Corbett Inves't Co. v. State Tax Com.*, 181 Or 244, 181 P2d 130.

■ The combining of these rules so as not to "thwart the purpose of the lawmakers" leads to the rule adopted by this court of strict but reasonable construction of tax exemption statutes. *Mult. School of Bible v. Mult. Co.*, 218 Or 19, 343 P2d 893.

■ "Exclusively used" is primary use made of the

property, and its use for exemption purposes is measured by the reasonable applicability of the property to carry out the purposes of the exempt taxpayer. *Mult. School of Bible v. Mult. Co.,* supra.

■ It must be conceded that providing housing space for students at the University meets this test of applicability of the property for university purposes, but this does not reach the question raised by the defendant Tax Commission.

■ The purpose of the legislature in passing ORS 307.130 was primarily to aid the "incorporated literary, benevolent, charitable and scientific institutions" by relieving them of a tax burden and thus aiding them to this extent in carrying on a purpose deemed of benefit to the public good.

The exact question which this appeal presents then is when is property owned by the charitable institutions said to be "actually and exclusively occupied or used in * * * work carried on by such institutions?"

The Tax Commission relies upon the following cases: *Cedars of Lebanon Hosp. v. County of L.A.,* 35 Cal2d 729, 221 P2d 31, 15 ALR2d 1045 (1950); *Institute of Holy Angels v. Fort Lee,* 80 NJL 545, 77 A 1035 (1910); *Longport v. Bamberger Seashore Home,* 91 NJL 330, 102 A 633 (1917). In these cases, the courts held that in applying the rule of strict construction it could not be said that buildings in the course of construction on the assessment date could be said to be actually occupied or used by the exempt charity.

It is to be noted, however, in *Cedars of Lebanon Hospital v. County of L.A.,* supra, there is a strong dissent, and subsequently the legislature provided exemptions for buildings in the course of construction. *Nat. Charity League, Inc. v. County of L.A.,* 164 Cal

App2d 241, 330 P2d 666 (1958). In *Longport v. Bamberger Seashore Home,* supra, with two justices dissenting, the majority of the justices reluctantly held that because of the rule of *stare decisis* a building held by a charitable corporation while in the course of construction was not then actually used and, therefore, not tax exempt.

However, it should be noted that the New Jersey court, in cases subsequent to those above cited, held in *Seaside Home v. State Board Taxes, etc.,* 98 NJL 110 (1922), 118 A 704, that property that had been used, but was not in use on the assessment date, which would probably be used the following year, was exempt. Distinguishing *Longport v. Bamberger Seashore Home,* supra, and *Institute of Holy Angels v. Fort Lee,* supra, on the sole ground that in those cases use was only intended; they had never been actually used.

In *Trenton Ladies Sick Benefit Soc. v. City of Trenton,* 19 NJ Misc. 176, 17 A2d 809 (1941), the court found that the building was completed and ready to be used on the assessment date. It was not in actual use, however, because no applications for residency had been made by indigents on the assessment date. The court held that the property qualified for exemption under the statute as being in actual occupation and use.

It is clear, therefore, that even in New Jersey actual physical occupancy is not necessary to meet the requirement of actual occupancy as set forth in their statute.

We prefer to follow the cases from jurisdictions which hold that a building in the course of construction is being occupied and used for the purposes of

the exempt corporation as more reasonable and more in spirit with the purpose of the rule of strict but reasonable construction.

In *New England Hospital v. Boston,* 113 Mass 518, 521, the court stated:

"The facts agreed show that the plaintiffs, at the date of the assessment of this tax, had recently purchased the land in question for the purpose of establishing and maintaining a hospital thereon, and were diligently proceeding with the preliminary measures necessary to the erection of the same. The land must therefore be deemed to have been then occupied by them for the charitable purposes for which they were incorporated, and as such exempted from taxation by the Gen. Sts. c. 11, § 5, cl. 3."

The word "actual" was not contained in the Massachusetts statute at that time, but it is clear that the court determined that the right to control the use of the property as distinct from actual physical occupancy constituted an occupancy contemplated by the Act.

The court of New York in considering "actual use" held that buildings which had been purchased and were in the process of remodeling, but were not occupied by anyone, were actually being used by the corporation for its purposes on the assessment date.

"* * * If the subsequent use created a tax exempt status then a use which was confined to readying them for such purpose was likewise entitled. See Matter of Syracuse University, 214 App. Div. 375, 378, 212 N.Y.S. 253, 257." *Application of Thomas S. Clarkson Memorial C. of T.,* 87 N.Y.S.2d 491, 492, 274 App Div 732. Affirmed on appeal without dissent, 300 NY 595, 89 NE2d 882.

In *City of Richmond v. Richmond Memorial Hospital,* 202 Va 86, 116 SE2d 79, the hospital building

was under construction for the tax years 1956-57. The exemption statute provided an exemption only for "[r]eal estate belonging to, actually and exclusively occupied and used by" the exempt institution. 202 Va 86, 87. As to the contention that the property was not actually and exclusively occupied and used during the period of construction and therefore not exempt, the court stated:

"\* \* \* It is a matter of common knowledge that where property is being developed for an intended use actual physical occupancy cannot begin immediately. This hospital existed as a corporate entity before it was a hospital in brick and mortar, and as a corporate entity it was occupying and using its real estate during the two years in question to develop the hospital in the physical sense.

"In other words, it is not necessary that actual physical use of property for an exempt purpose be commenced before it is entitled to be exempted from taxation. \* \* \* Carney v. Cleveland City School District Public Library, 1959, 169 Ohio St. 65, 157 NE2d 311, 313, 314; Hedgecroft v. City of Houston, 1951, 150 Tex. 654, 244 S.W.2d 632, 636; In re Assessment of Property of Zion Lutheran Church, 1949, 202 Okla. 174, 211 P2d 534." 202 Va 86, 95, 116 SE2d 79, 84.

In *Village of Hibbing v. Commissioner of Taxation,* 217 Minn 528, 14 NW2d 923, 156 ALR 1294, where property had been purchased but was in the process of being remodeled and was not physically occupied, the court stated:

"\* \* \* since on May 1, 1941, the parties were using the opportunity, incident to the exemption, of adapting and fitting the property for use as a public hospital, they were devoting the property to a use comprehended within the exemption, and consequently that it was being used and operated as a public hospital within the meaning

of the exemption provisions of the constitution and statutes." 217 Minn 528, 535, 14 NW2d 923, 156 ALR 1301.

■ We are of the opinion that the better rule is found in the opinions of the courts which have carefully considered the issue and reached the conclusion that "actually occupied and used" pertains to whether or not the premises are then being prepared to carry out purposes of the exempt charity and if they are they fall within the legislative intent.

The judgment of the tax court is affirmed.

O'CONNELL, J., dissenting.

It is conceded by the majority that tax exemption statutes are to be *strictly* construed. The qualification that a construction must also be "reasonable" does not destroy the constructional preference for the taxability of property. It follows that if the statute is susceptible to either of two constructions, each of which is reasonable, we must accept the construction which spells liability for the taxpayer.

In the present case the statute provides for an exemption only when the property "is actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work" carried on by the qualifying institution. It stretches the meaning of the terms of the statute to describe the process of constructing a building as the actual and exclusive use or occupancy for the purposes specified. But conceding that these terms can have this meaning, it would seem that the majority would have to admit that it would be at least as reasonable to construe the language to mean that the exemption was not to be given unless the institution actually carried on some "literary, be-

nevolent, charitable or scientific work" on the property.[1] If the latter construction is reasonable, then the rule of strict construction which we have previously followed (and which I believe is sound) would require us to deny the exemption in this case.

I suspect that the source of the majority's error can be found in the phrase "strict but reasonable." The addition of the qualification "reasonable" to the strict construction rule is unfortunate. A statute must always be reasonably construed in the sense that the construction should not run counter to the purpose of the legislature. However, the word "reasonable" is frequently used by courts to mean that construction which is the more reasonable of two feasible alternatives. This permits the court to weigh the alternatives and choose the one which in its judgment seems the most just and equitable. I believe that the majority engaged in this kind of a weighing process in the present case. But the rule of strict construction prevents the court from freely making this kind of choice. The court must construe tax statutes "most strongly against those petitioning for the exemption." *Oregon Methodist Homes, Inc. v. Tax Com.,* 226 Or 298, 306, 360 P2d 293 (1961). Tested by this principle of construction, the claim for exemption in the present case should

---

[1] The latter construction was given to similar language by the court in Cedars of Lebanon Hospital v. Los Angeles County, 35 Cal2d 729, 221 P2d 31 (1950). The court said: "* * * Such express limitation, making *use* the focal point of consideration, contemplates *actual use* as differentiated from an *intention to use* the property in a designated manner. It has been generally so held in the construction of kindred exemption laws in other jurisdictions * * *," and again:

"* * * The same observation may well be made in this case for regardless of the rule of strict construction here applicable, it would appear that under no theory of construction could a building in the course of erection be viewed as being used for any purpose." (221 P2d at 39.)

be denied. This court may feel that it is desirable to allow an exemption to an educational institution which, by beginning construction of a building on its property, has taken steps to use the property for its purposes. But unless we are prepared to say that the statute cannot rationally be construed as it was in the *Cedars of Lebanon Hospital* case, we must deny the claim for exemption.

The decree of the Tax Court should be reversed.