## SOCIETY OF ST. VINCENT DePAUL OF PORTLAND, OREGON, INC. *v.* DEPARTMENT OF REVENUE

Eugene E. Feltz, Casey, Palmer, Feltz & Sherry, Portland, represented plaintiff.

G. F. Bartz, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered September 11, 1974.

CARLISLE B. ROBERTS, Judge.

Plaintiff appealed from the defendant's Order No. VL 73-423 (dated August 2, 1973), dismissing plain-

tiff's appeal from the order of the Multnomah County Department of Assessment and Taxation for the tax year 1972-1973, denying a tax exemption sought for certain real property located in Multnomah County, described as Lots 1 and 2, Block 5, Maegley Highland (Assessor's Account No. 52670-1540), consisting of a building and land located at 4943 N. E. Union Avenue, Portland. The plaintiff is an exempt charitable institution and claims the exemption pursuant to ORS 307.130.

The pleadings admitted that the plaintiff is incorporated under the laws of the State of Oregon for benevolent and charitable purposes, including aid to physically, mentally, or emotionally handicapped individuals through occupational rehabilitation activities of an educational or therapeutic nature, including the maintenance of a sheltered workshop, pursuant to ORS 344.710 et seq.

Plaintiff's testimony revealed that for over a year prior to June 30, 1972, the plaintiff determined to undertake an enlargement of its work of rehabilitation by obtaining a site with a building which would be suitable for the evaluation of the particular clients who could be benefited by the plaintiff's program, to provide space for the work activities program for mentally retarded persons and to provide space for a sheltered workshop (within the technical definition of ORS 344.710). Early in 1972, a possible donor was found in the person of Mr. Henry Casey, the owner of the property located at 4943 N. E. Union Avenue, Portland. The building on this property consisted of a basement, a main floor, and a second story, originally designed for use as an automobile sales agency. The 100-by-100 foot building had a plate glass front, a

series of small offices, a showroom on the front part of the first floor, with space for a garage shop in the rear. It was the opinion of the plaintiff that this property could be used on a small scale without remodeling. Mr. Casey agreed to sell and then, becoming interested in the project, decided to donate the property to the plaintiff and turned over the keys to Mr. Bernard Comerford, a member of plaintiff's Executive Committee and liaison man in setting up the rehabilitation program.

The property had been leased on a month-to-month basis to a manufacturer of fiber glass boat hulls. On approximately June 15, 1972, the plaintiff received access to the building. Thereupon, two or three "clients" of the plaintiff were set to work to clean up the premises. It was found that the building was so impregnated with the fiber glass that casual labor was not capable of cleaning it properly. The Society, having a $15,000 fund to start the rehabilitation program, decided that the cleaning should be done by a professional company, payment being made from the fund.

As a charitable organization, the plaintiff was aware of ORS 307.130, 307.162 and 311.410. The first section cited provides for the exemption from real property taxes of property owned or being purchased by incorporated charitable institutions which "is actually and exclusively occupied or used" in the charitable work carried on by the institution, provided that the application required by ORS 307.162 is filed with the county assessor on or before April 1 in the year in which the property is acquired, with the further provision that when the property designated in the claim for exemption is acquired after January 1 and before

July 1, a claim for that year shall be filed on or before April 1 in such year or within 30 days from the date of acquisition of the property, whichever is the later. This late filing provision is also found in ORS 311.410 (3).

The deed to the property was received by the plaintiff on June 29, 1972. The deed was filed in the Multnomah County Courthouse on June 30, 1972, and on the same day application for exemption was made to the Director of the Department of Assessment and Taxation of Multnomah County pursuant to ORS 307.162.

The exemption claim having been filed, on July 12, 1972, Mr. Larry Brace, the exemption supervisor for Multnomah County, stopped by the site on his way home from work in the midafternoon of July 12, and found the building locked and no activity in evidence. A second visit at the same time was made on July 17, with the same result. On July 20, accompanied by his then supervisor, Mr. Ayers, he met Mr. Royer, the executive secretary of the plaintiff, and they went through the entire building. The building had not been cleaned; a few appliances had been brought in and set against the south wall; a desk and chair had been placed in the showroom. In his view, the building was not being "used" for the charitable work for which it had been obtained. He and Mr. Ayers recommended that the exemption be denied. This recommendation was approved by the Department of Assessment and Taxation and, on appeal, affirmed by the Department of Revenue on the ground "that the subject property was not converted to a tax-exempt use by July 1, 1972."

Mr. Royer testified on behalf of the plaintiff that

it had been formulating a program for a sheltered workshop since 1971. Early in 1972, it ordered architectural drawings prepared for the remodeling of a building for which a variance had been obtained from the City of Portland. However, when the Casey building came on the market and appeared to be better suited for the plaintiff's purposes, effort was made to obtain it and, upon being successful, immediate steps were taken to secure the exemption and to put the building into use as rapidly as possible. The time element was such that the attempted initial cleaning of the building was the only thing engaged in prior to the filing of the claim for exemption, but this was about all that was possible to be done in the time available; and the program for the building's use continued as rapidly as plaintiff's time and money would allow, subsequent to the delivery of title and possession of the property.

No physical alterations of the structure were begun before July 1, 1972. After acceptance of the deed, Mr. Comerford spent time in soliciting material for use in training clients in actual job situations. After cleaning the building, the only remodeling done was to install additional toilet facilities in the back part of the premises. Mr. Comerford was able to obtain piecework from Coca Cola Company, Tektronix, Inc., Graphic Arts, Del Monte, Freightliner Corporation, Omark Industries, Inc., and others and within six months was serving 30 clients daily. The services offered included evaluation, work adjustment training, personal adjustment, social casework, vocational training, and placement for multiple-handicapped clients. Most of these people had been referred to the plaintiff by Oregon's Vocational Rehabilitation Division in the

Department of Human Resources. In October 1972, the State of Oregon issued a formal contract, authorizing the plaintiff to conduct a sheltered workshop in the subject property.

ORS 344.710 defines a "[s]heltered workshop" as "a nonprofit facility *established and operated * * *.*" (Emphasis supplied.) ORS 307.130 provides:

> "Upon compliance with ORS 307.162, the following property owned or being purchased by incorporated literary, benevolent, charitable and scientific institutions shall be exempt from taxation:
>
> "* * * * *
>
> "(3) All real or personal property of a sheltered workshop or any retail outlet thereof, including inventory. As used in this subsection, 'sheltered workshop' means either those facilities defined in ORS 344.710 or facilities which provide physically, mentally or emotionally handicapped individuals with occupational rehabilitation activities of an educational or therapeutic nature, even if remuneration is received by the individual.
>
> "* * * * *."

■ ORS 307.130 (3) is not meant to exempt every building in which handicapped people are employed. There must, in fact, be an active program in existence, designed to teach usable skills to the handicapped people involved, or to have some therapeutic value to them, and the property must be necessary to provide these services.

■ The plaintiff had a plan to convert the subject property into a workshop but, as of July 1, 1972, no physical changes to adapt the property had been started, nor was any active use made of the property that would entitle it to be classified as exempt. Mere acquisition of property with the intent to convert it

to a workshop, without actively making necessary physical alterations or actually using the property for an exempt purpose, cannot be ground for granting an exemption under ORS 307.130 (3).

Plaintiff's own testimony alludes to the numerous people with good intentions who have embarked on plans to set up various workshops and have, in fact, purchased land and, perhaps, gone to the point of making minor alterations, and then failed to carry out these plans to the extent that actual workshops were established.

The legislature has recognized the beneficial work that sheltered workshops do by giving a broad tax exemption to existing sheltered workshops. It has created an exceptional provision which allows the tax-exempt parties until July 1 of any given tax year to convert the property into a tax-exempt status. Certainly, there must be some cutoff point and at that cutoff point there must be some use made of the property that indicates that it has changed to a tax-free status. In order to make this statute administratively feasible, there must be something more in evidence than a good intention; there must, in fact, be a use of the building that qualifies it as a workshop.

In the present case, the plaintiff merely took possession of the building in question; no active programmed training could take place there, only incidental training that was necessary to clean the building for whatever purposes it might have ultimately been used for.

This situation is similar to that described in *Emanuel Lutheran Char. v. Dept. of Rev.*, 4 OTR 410, 421-422 (1971), aff'd, 263 Or 287, 502 P2d 251 (1972),

where the court found a requirement in the statute "of *present* and *current* utilization of the property for the purposes of the institution's ultimate goals."

Plaintiff asserts that the rule expounded in *Willamette Univ. v. Tax Com.,* 245 Or 342, 422 P2d 260 (1966), would require that the subject property also be granted an exemption. It must be noted, however, that in *Willamette Univ., supra,* a physical change to the property occurred, visible to the officers administering this law, putting them on notice of a possible change in the property's use. (It can also be noted that the *Willamette Univ.* case involved the 1963 tax year and, while the Supreme Court ruling does not specifically refer to the state of the property as of July 1, 1963, the facts in the record show that as of June 1, 1963, the construction in question was completed.)

*Eman. Luth. Char. Bd. v. Dept. of Rev.,* 263 Or 287, 292, 502 P2d 251 (1972), makes clear that land held for a future use is not exempt. It is the holding of this court that land and a building recently acquired and not adapted or ready on the assessment date (or, in this case, on or before the succeeding June 30) and used as a sheltered workshop cannot be granted the tax exemption described in ORS 307.130 (3).

Defendant's Order No. VL 73-423 is affirmed.