IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax Exemption

MOHAWK VALLEY LIONS CLUB ) 
FOUNDATION, )
 )
Plaintiff, ) TC-MD 110254C
 )
v. )
 )
LANE COUNTY ASSESSOR, )
 )
Defendant. ) **DECISION**

Plaintiff has appealed from Defendant's denial of its application for property tax exemption for the 2010-11 tax year on certain real property identified in the Lane County Assessor's records as Account 0031284. Trial in the matter was held by telephone on March 12, 2012. Plaintiff was represented by David E. Carmichael, attorney at law. Joseph F. Miller (Miller), Plaintiff's Executive Director, appeared and testified on behalf of Plaintiff. Defendant was represented by Lori Halladey (Halladey), an employee at the Lane County Assessor's office.[1]

## I. STATEMENT OF FACTS

The subject property was acquired by Plaintiff in September 2009. The property was deeded to Plaintiff on or about September 30, 2009.[2] (Ptf's Compl, Ex 1 at 1.) The property is located on the Mohawk River, at the intersection of Marcola Road and Wendling Road, in

/ / /

---

[1] Halladey did not identify herself in terms of her position at the assessor's office. The January 12, 2011, exemption application denial sent by Defendant to Plaintiff is signed by Halladey and identifies her as a Senior Office Assistant. (Ptf's Compl, Ex 2.)

[2] The testimony at times spoke generally of the transfer of the property in September 2009, and occasionally as occurring on September 22, 2009. While some evidence shows that Plaintiff's Board met on September 22, 2009, and agreed to authorize the payment of $400 to Lane County to cover the costs of title transfer, the Quitclaim Deed submitted with the Complaint indicates that the commissioners agreed to transfer title September 30, 2009, and it appears the deed was actually recorded October 6, 2009. (Compl Ex 1 at 1; Ptf's Ex 1 at 5-6.)

Marcola, Oregon. (Ptf's Ex 1 at 1, 3.) The property was transferred to Plaintiff by the County for "[u]se for Public Purposes per ORS 271.330 (3)." (Ptf's Compl, Ex 1 at 1.)

The deed provides that transfer of the property "is conditioned upon use of the herein conveyed property by Grantee, its heirs, assigns or successors in interest, as a park, open space and natural area for perpetual public use * * *." (*Id*.)

On November 22, 2010, Defendant received an application for property tax exemption from Plaintiff. A representative from Defendant's office visited the property on January 12, 2011, and Halladey subsequently issued a letter denying Plaintiff's exemption application that same day (January 12, 2011). (Ptf's Compl, Ex 2.) The application was dated November 15, 2010, and signed by Miller. The denial letter indicates that the application "has been denied for the 2010-11 assessment and tax year because there was not a qualified use of the property as of June 30, 2010." (Ptf's Compl, Ex 2.) Plaintiff's application for exemption for the 2011-12 tax year was approved by Defendant by letter dated August 18, 2011. (Ptf's Ex 1 at 1.)

Plaintiff submitted a six-page written chronology of events prepared by Miller encompassing the period of time beginning September 9, 2008, and ending May 10, 2011. (*Id*. at 3-9.) That written chronology explains Plaintiff's activities regarding the acquisition and development of the property prior to and following the January 1, 2010, assessment date.

On September 9, 2008, more than a year before the assessment date for the 2010-11 tax year, Plaintiff discussed the subject property as a future park during a Club meeting. (*Id*. at 3-4.) On February 10, 2009, Plaintiff formed a "Greenbelt Committee" to pursue ownership of subject property and oversee its transition to a park. (*Id*. at 4.) The Club met again on March 24, 2009; after a presentation by the Greenbelt Committee, or the circulation of a report by that committee to the Club, Plaintiff passed a motion to accept the county's offer to donate the subject property to Plaintiff. It was also agreed during that meeting that "our Club needs to pursue our non-

profit/tax exempt status[.]" (*Id*.) On April 14, 2009, members discussed the possibility of working with an attorney associated with another Lions Club in Lane County, *e.g.*, to form the charitable organization and develop bylaws. (*Id*.) Shortly thereafter, on April 28, 2009, the Club approved a motion to pursue the incorporation of the Mohawk Valley Lions Club Foundation in order to obtain IRS section 501(c)(3) status. (*Id*. at 4-5.) On May 12, 2009 the Greenbelt Committee reported that Lane County had agreed to transfer the property to Plaintiff provided the Club continued to pursue its nonprofit status. (*Id*. at 5.) Plaintiff also agreed to reach out to other area organizations, including the Mohawk Valley Grange and the Watershed Conservancy group, for ideas on development and use of the property. (*Id*.)

On October 27, 2009, Plaintiff discussed the future use of the subject property as a park, emphasizing public access to the river, preservation of "Green space," and the labeling of plants for public education and involvement. (*Id*. at 6). On December 13, 2009, Plaintiff discussed the name of the future park. (*Id*. at 7.) Miller testified that Club members began cleaning up the property shortly after the organization acquired the property in October 2009. At least two other area organizations, the Mohawk Valley Grange and the Mohawk Watershed Conservancy organization, worked with Plaintiff in cleaning up the property, which included clearing brush, removing rocks, and grading the land. On April 27, 2010, it was reported that the "April 10th Park clean-up went extremely well." (*Id*.) After the January 1, 2010, assessment date, preparations were made to put up signs, mow, and lay gravel.

Progress on the park continued through 2010 and 2011. Plaintiff added structures, graded and re-seeded the park, put in a gravel parking lot and installed posts to keep vehicles from driving in the park, and erected a park sign in January 2011. (Ptf's Ex 1 at 7-8.) Future plans include the addition of a flagpole. Photographs submitted for trial, which were admittedly taken after the applicable assessment date, depict a nice riverside park.

Plaintiff argues exemption is warranted because the Club had its eyes on the property for years, the property was donated to Plaintiff by the county and the land dedicated for public use as a park, and Plaintiff undertook steps to develop the park over time using all volunteer time and materials. In the end, Plaintiff established a beautiful park available for use by the general public; Plaintiff argues that a park is not something developed overnight, particularly when done by a nonprofit organization comprised of volunteers. Defendant argues exemption should not be granted in this case because there was no qualifying use at the beginning of the 2010-11 tax year.

## II. ANALYSIS

In Oregon, the guiding principle is that taxation is the rule, and exemption from taxation is the exception. *Dove Lewis Mem. Emer. Vet. Clinic v. Dept. of Rev. (Dove Lewis)*, 301 Or 423, 426, 723 P.2d 320 (1986). The court is guided by the rule that property tax exemption provisions are strictly but reasonably construed. *SW Oregon Pub. Def. Services Inc. v. Dept. of Rev. (SW Oregon)*, 312 Or 82, 88-89, 817 P.2d 1292 (1991). "Strict but reasonable construction does not require the court to give the narrowest possible meaning to an exemption statute. Rather, it requires an exemption statute be construed reasonably, giving due consideration to the ordinary meaning of the words of the statute and the legislative intent." *North Harbour Corp. v. Dept. of Rev.*, 16 OTR 91, 95 (2002). The plaintiffs bear the burden of proof and must establish their case by a preponderance of the evidence in the tax court. *See* ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971).

At issue in this appeal is whether the subject property qualifies for exemption under the statutory requirements of ORS 307.130(2).[3] ORS 307.130(2) provides, in pertinent part:

/ / /

---

[3] All references to the Oregon Revised Statutes (ORS) are to 2009.

"Upon compliance with ORS 307.162, the following property owned or being purchased by * * * charitable * * * institutions shall be exempt from taxation:

"(a) Except as provided in ORS 748.414, only such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the * * * charitable * * * work carried on by such institutions."

The parties agree that Plaintiff is a charitable institution and the use of the subject property as a park is a qualifying use. The issue is whether the subject property was "actually and exclusively occupied or used" as of the July 1, 2010, assessment date.

The definition of "actually and exclusively occupied or used" was developed in *Willamette Univ. v. Tax Comm'r (Willamette University)*, 245 Or 342 (1966). The Oregon Supreme Court stated that " '(e)xclusively used' is primary use made of the property, and its use for exemption purposes is measured by the reasonable applicability of the property to carry out the purposes of the exempt taxpayer." *Id*. at 344-45 (citation omitted). Additionally, " 'actually occupied and used' pertains to whether or not the premises are then being prepared to carry out purposes of the exempt charity * * *." *Id*. at 349. Accordingly, the court has held that buildings under construction are "actually occupied and used" for the purposes of ORS 307.130. *Id*., *see also Emanuel Lutheran Charity Bd. v. Dept. of Rev. (Emanuel)*, 263 Or 287, 292 (1972) (holding that "[a]ctual occupancy must mean as a minimum that the land be occupied by a building under construction").

Plaintiff contends that *Catholic Community Services of Lane County Inc. v. Lane County Assessor (Catholic Community Services)*, TC-MD No 091567B, WL 1362164 (2011) is similar to the case before the court. In *Catholic Community Services*, the court examined prior cases to summarily conclude:

/ / /

/ / /

/ / /

> "This court has allowed a property tax exemption when a charitable organization that owns or leases property shows that it is using the property during a transition period even if that use is for storage during the time the property is in transition.
>
> "* * * * *
>
> "In contrast, this court has denied a property tax exemption when the organization permits a property to sit idle, shows no active use of the property and has no immediate plans to use the property."

*Id*. at *3 (internal citations omitted). The court focused on the *Willamette University* standard of whether the property was "being prepared to carry out the purposes of the exempt charity"; there, it held that changing locks, holding meetings with architects and contractors, and updating a building to meet various code requirements constituted "actual use." *Id.* at *4.

In this case, the use of the subject property does not include the use of a building. *Willamette University*, *Emanuel*, and *Catholic Community Services*, although not directly analogous, provide that when a property is "being prepared" for its charitable use, in this case, a park, it will be deemed "actually used or occupied" for the purposes of ORS 307.130. Factors to be considered are whether the property is in a transition period, whether the property is sitting idle, whether there is active use of the property, and whether active, identifiable planning to enable the qualifying charitable use of the property is underway.

Plaintiff planned to turn the subject property into a park as early as September 2008. It reorganized itself as a corporation and sought 501(c)(3) status for the primary purpose of owning the subject property and maintaining it as a park. Shortly before or just after the January 1, 2010, assessment date, Plaintiff supervised a clean-up of the subject property, to begin preparations for the transformation of the land into a park. The property was not sitting idle on July 1, 2010, and Plaintiff had plans to create a park almost two years before that date. Additionally, Plaintiff was required by the terms of the deed to maintain the property as a park. Under all circumstances, the court finds that the property was "being prepared to carry out the purposes" of Plaintiff on

DECISION  TC-MD 110254C                                                                          6

January 1, 2010. It is the nature and extent of the plans and physical efforts Plaintiff had undertaken by the assessment date that distinguishes this case from *Emanuel*. In *Emanuel*, the taxpayer, a general hospital, began acquiring real property in the vicinity of its hospital, and adopted a long-range master plan for future expansion. *Emanuel*, 263 Or at 288-289. Pursuant to the master plan, the plaintiff in *Emanuel* had a future intent to use the property for an addition to its main hospital, but on the assessment date, the property involved there was vacant awaiting future use, with no current actual activity occurring on the land in dispute.

III. CONCLUSION

After careful review of the testimony and evidence, the court concludes that the subject property, Account 0031284, qualifies for exemption for the 2010-11 tax year because it was "actually and exclusively occupied or used" for the purposes of ORS 307.130; Plaintiff was actively engaged in the preparations to make the subject property into a public park. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is allowed.

Dated this ___ day of July 2012.

DAN ROBINSON
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Dan Robinson on July 24, 2012. The Court filed and entered this document on July 24, 2012.*