IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| BLANCHET HOUSE OF HOSPITALITY, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 130503C |
| | ) | |
| v. | ) | |
| | ) | |
| MULTNOMAH COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **FINAL DECISION** |

The court entered its Decision in the above-entitled matter on May 19, 2014. The court did not receive a request for an award of costs and disbursements (TCR-MD 19) within 14 days after its Decision was entered. The court's Final Decision incorporates its Decision without change.

Plaintiff appeals the taxable status of the subject property for the 2013-14 tax year, seeking to overturn Defendant's determination that the property is no longer exempt, but rather 100 percent taxable. Plaintiff seeks full exemption of the subject property, which is identified in the assessor's records for the 2013-14 tax year as Account 140393. The matter is before the court on cross-motions for summary judgment. The court heard oral argument by telephone on April 2, 2014. John M. McGuigan, attorney at law, appeared and testified on behalf of Plaintiff. Lindsay Kandra, Assistant County Attorney, Multnomah County, appeared on behalf of Defendant. Both parties submitted sworn declarations with their motions. Defendant also submitted an exhibit with its response and cross-motion.

I. STATEMENT OF FACTS

The parties submitted Joint Stipulated Facts. The salient facts to which the parties have agreed are as follows:

A.      *Plaintiff's organization and mission*

Plaintiff, "an Oregon nonprofit corporation organized in 1952 * * * is a faith-based social services organization located in the Old Town District of Northwest Portland." (Stip Facts at 1, ¶ 1.) Plaintiff's "principal charitable mission is to provide meals to the homeless and poor population of Portland and to offer shelter and temporary housing to homeless men, most of whom are in recovery from drug or alcohol addiction." (*Id*. at 1-2, ¶ 1.) Plaintiff's "simple mission is 'to feed, clothe and offer shelter and aid to those in need.' " (*Id*. at 2, ¶ 1.)

Plaintiff has been continually exempt from federal income taxes since its inception under Internal Revenue Code (IRC) Section 501(c)(3) and predecessor sections because it is "organized and operated exclusively for charitable purposes." (*Id.* at 2, ¶ 2.)

B.      *The subject property*

"For its first 60 years of operation ([1952] until September 2012), [Plaintiff] operated from its building [located] at 340 N.W. Glisan Street * * *." (*Id*., ¶ 3.) That property is the subject of this appeal (subject property). (*Id*.)

"The Subject Property was constructed in 1909 as a hotel. [Plaintiff] began leasing the subject property in 1952 and purchased it in 1958." (*Id*.) "The Subject Property consists of [a building that has] three [above-ground] stories plus a basement[,] constructed on a 2,500 square foot lot. The total square footage of the building (basement plus three above-ground floors) as listed in the Multnomah County property tax records is 10,000 square feet." (*Id*.)

The parties agree that Plaintiff "[c]urrently * * * serves 800-1,000 free meals every day[,]" and that "[d]uring 2013, [Plaintiff] served approximately 340,000 free meals." (*Id*., ¶ 4.)

"Over the years, the Subject Property became increasingly too small, old and inadequate to adequately serve the size of [Plaintiff's] food service and other charitable programs. In

approximately 2002, [Plaintiff] began investigating sites for a larger, more adequate location in the same neighborhood." (*Id. ¶* 5.)

C.     *Prior years' exemption*

"Continually since [Plaintiff] acquired the Subject Property, the Subject Property has been exempt from Oregon real property taxes under one or more provisions of ORS Chapter 307 (or predecessor statutes)[.]" (*Id.*, ¶ 4.)

D.     *Plaintiff's various agreements with governmental entities*

        1.     *Land and cash grants to Plaintiff for construction of a new building*

        In December 2008, Plaintiff entered into an agreement with the Portland Development Commission (PDC). (*Id.* at 3, ¶ 6.) That agreement was subsequently amended twice in 2011. (*Id.*) The general terms of that agreement gave Plaintiff ownership of a 9,500-square-foot parcel of land located on the same block as the subject property for $-0-, plus a $2 million grant intended "to defray part of the cost of construction" of a new building out of which Plaintiff would continue to operate its program of feeding, clothing, and sheltering homeless and poor persons, "and be in a position to expand its charitable programs." (*Id.*) The parties have referred to the agreements between Plaintiff and PDC as a "DDA." [1] (*Id.*)

        2.     *Plaintiff's option agreement with PDC and the City of Portland to sell the subject property*

        "In consideration of the land and cash grants [to Plaintiff] from PDC, [Plaintiff] agreed to grant PDC an option to purchase the Subject Property for a payment by PDC of $0. The option was to become exercisable upon [Plaintiff's] completion and occupancy of the New Building." (*Id.*) (citation omitted).)

_____

[1] Stipulated Fact No. 6 describes the document as "an Agreement for Disposition and Development of Property." Presumably the acronym "DDA" stands for disposition and development agreement. However, for the purposes of this Decision, the derivation and use of the acronym is not important.

Approximately two and one-half years later, "[i]n July 2010, PDC transferred its rights under [the DDA] to the City of Portland Housing Bureau[.]" (*Id*., ¶ 7.) (citation omitted).) In the parties' Joint Stipulated Facts, they refer to the City of Portland Housing Bureau as "the City." (*See, e.g., id.*, ¶ 8.)

"When the transactions contemplated by the DDA closed in July 2011, [Plaintiff] and the City entered into a Purchase Option Agreement ('Option Agreement')." (*Id*.) That Option Agreement included the following terms:

Plaintiff "granted the City an option to purchase the Subject Property for $1.00 * * *; the option was to expire December 31, 2013." (*Id*.) Plaintiff "agreed that during the Option Period, [Plaintiff] would not (A) encumber the Subject Property * * * (B) use the Subject Property as collateral for any debt obligation * * * or (C) enter into any lease of the Subject Property that extends beyond the Option Period * * *." (*Id*. at 3-4, ¶ 8.)

> "Also when the transactions contemplated by the DDA closed in July 2011, the DDA was amended to increase the City's cash grant for construction of the New Building from $2 million to $4 million * * * which additional funds would allow [Plaintiff] to construct of the New Building with four above-ground floors * * * so that [Plaintiff] could expand its transitional housing program and assist the City in meeting certain low-income housing goals. [Plaintiff's] receipt of [the] additional $2 million grant was also conditioned on [Plaintiff] entering into the Option Agreement with the City on the Subject Property * * *."
> (*Id*. at 4, ¶ 9.)

"[Plaintiff] and PDC later agreed to extend the Option Period through June 30, 2014 * * * and *the City assigned its rights under the Option Agreement back to PDC * * *.*" (*Id*., ¶ 10) (emphasis added).)

"To exercise its option on the Subject Property, PDC [was required to] notify [Plaintiff] of [its intent to] exercise [its option] no later than May 31, 2014 * * *." (*Id*., ¶ 11.) In the event that PDC opted to exercise its option to purchase the subject property for the $1 option purchase

price, "PDC [was] required to reimburse [Plaintiff] for [Plaintiff's] out-of-pocket costs of insuring, maintaining and securing the Subject Property during 2014 up to $5,000 in the aggregate * * *." (*Id*.)

E.     *Plaintiff's new building*

Construction of the new building was completed in September 2012. (*Id*. at 5, ¶ 12.) Plaintiff "at that time * * * moved its food services operations, its residential program and its offices into the New Building." (*Id*.)

F.     *Change to subject property's tax status*

Defendant thereafter sent Plaintiff a letter dated July 23, 2013, titled "Notification of Status Change." (Stip Fact #13; Ptf's Compl at 2.) That notice, according to the parties' Joint Stipulated Facts, provided "that the Subject Property would become 100% taxable beginning with Tax Year 2013/14." [2] (Stip Facts at 5, ¶ 13.) The stated "reason for the status change was [a] 'change in use of the property.' " (Ptf's Compl at 2.)

G.     *Partial use of the subject property*

An employee of the Multnomah County Assessor's office "visited the Subject Property on December 20, 2013, [and determined that] approximately 1,152 square feet of the Subject Property was being used by [Plaintiff] for storage of food items and other goods and supplies for [Plaintiff's] charitable programs." (*Id*., ¶ 15.)

Plaintiff attached to its Motion for Summary Judgment a Declaration of Dennis Arnold (Arnold). That declaration indicates that Arnold is currently Plaintiff's "Food Services Manager," and that when Plaintiff moved from the subject property to the "New Building" next

---

[2] The notice, which Plaintiff attached to its Complaint, states in relevant part: "The above referenced property you own will become 100% taxable beginning with the tax year 2013/14. The reason for the status change is: * * * [c]hange in use of the property." (Ptf's Compl at 2.)

door, he "was an assistant floor supervisor in [Plaintiff's] food service operations." (Arnold Decl at 1, ¶ 2.) Arnold goes on to state in his declaration that "[m]ost of the food items and other goods and supplies that[Plaintiff] uses in its * * * operations are donated * * * [that] [t]he timing, nature and quantity of those donations are unpredictable, and [Plaintiff] needs adjacent space in addition to the New Building to store and quickly access such items * * *." (*Id.*, ¶ 3.) Arnold adds that "storage space in the New Building is inadequate." (*Id*. at 2, ¶ 3.) He further states:

> "[Plaintiff's] food service operations require[] it to store large quantities of refrigerated and frozen food items for ready access, and the New Building does not have sufficient refrigerated/frozen storage space and equipment for that purpose. When [Plaintiff] moved to the New Building in September 2012, it retained approximately four 'chest' freezers in the basement of the Subject Property for frozen food storage."

(*Id*. at ¶ 4.) Arnold adds that the food and other items and supplies "have continuously been stored in the basement and first floor of the Subject Property since [Plaintiff] began operating [in] the New Building in September 2012." (*Id*. at ¶ 5.) According to the declaration, the other "items and supplies" so stored include "non-refrigerated goods and supplies * * * stored on pallets in the Subject Property"

Arnold states:

> "That use" of the subject property for the storage of food and other items and supplies "requires [Plaintiff] to maintain continuous utility services to the entire building on the Subject Property for power, heat and lighting and water for the fire sprinklers and for cleanup. That use also requires [Plaintiff] to continuously secure and monitor the Subject Property and to keep the fire sprinklers in the Subject Property continuously charged and maintained."

*(Id.)*

Finally, Arnold states that "personnel and volunteers regularly enter the Subject Property to deposit and retrieve stored food items and other goods and supplies." (*Id*. ¶ 6.)

/ / /

## II. ANALYSIS

### A. *The parties' positions*

Plaintiff seeks a determination from the court granting a full exemption for the subject property under either ORS 307.130(2)(a) or ORS 307.090(1). (Ptf's Mot for Summ J at 6; Ptf's Reply and Response to Def's Mot for Summ J at 1.) Although Defendant has not explicitly and concisely stated the exact relief it seeks in its Response to Plaintiff's Motion for Summary Judgment and Cross Motion for Summary Judgment, Defendant does repeatedly state in its motion that Plaintiff fails to meet the statutory requirement of actual and exclusive occupancy or use of the subject property and therefore does not qualify for exemption under ORS 307.130. Defendant further states that the two alternative arguments Plaintiff presents, which center on PDC's option rights, do not do not entitle a property to receive exemption under either ORS 307.130 or ORS 307.090. (Def's Resp and Cross-Mot for Summ J at 3-4, 6-7.) [3]

### B. *Summary judgment*

This matter is before the court on cross-motions for summary judgment. Tax Court Rule (TCR) 47 governs summary judgment motions.[4] The rule affords either party the opportunity to file a motion for summary judgment "in the party's favor upon all or any part" of "a claim, counterclaim, or cross-claim," and permits motions to be filed "with or without supporting affidavits or declarations." TCR 47 A.

---

[3] The court has noted Defendant's failure to explicitly state the relief it seeks because Defendant has seemingly taken two slightly different positions both in its cross-motion and during oral argument. Defendant argues that the property fails meet the statutory requirements for exemption under either ORS 307.130 or ORS 307.090, and that its motion should be granted, but Defendant also notes in its cross-motion that Plaintiff is making *de minimis* of the subject property of about 11 percent. (Def's Resp and Cross-Mot for Summ J at 3, 5-7.) Defendant reiterated those positions during oral argument, and acknowledged during that hearing that the court had the statutory authority to grant a partial exemption of the subject property. It is, therefore, not precisely clear to the court whether Defendant is making two alternative arguments, or one (*i.e.*, completely deny exemption or only allow a partial exemption).

[4] The court's references to the Oregon Tax Court Rules (TCRs) are to those in effect on January 1, 2014.

Under TCR 47, either party may file a motion for summary judgment. TCR 47 A. The court is required to grant the motion where "the pleadings, * * * declarations, and admissions on file show" two things: first, "that there is no genuine issue as to any material fact[,]" and second, "that the moving party is entitled to prevail as a matter of law." TCR 47 C. The rule further provides that no genuine issue as to any material fact exists if the court concludes that "no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." (*Id*.) Additionally, supporting documentation such as declarations "shall be made on personal knowledge, [must] set forth * * * facts [that] would be admissible in evidence, [and] show affirmatively that the * * * declarant is competent to testify to the matters stated [in the declaration]." TCR 47 D. Finally, where there is a properly supported motion for summary judgment, the adverse party must do more than merely rely on allegations or denials in its pleadings; but, instead, must "set forth specific facts [by affidavit, declaration, or otherwise as provided in the rule] showing that there is a genuine issue as to any material fact for trial." (*Id*.)[5]

/ / /

---

[5] Relevant portions of TCR 47 provide:

> "C. * * * The court shall grant the motion if the pleadings, depositions, affidavits, declarations, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law. No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment. The adverse party has the burden of producing evidence on any issue raised in the motions as to which the adverse party would have the burden of persuasion at trial. * * *

> "D. * * * supporting and opposing affidavits or declarations shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant or declarant is competent to testify to the matters stated therein. * * *When a motion for summary judgment is made and supported as provided in this rule an adverse party may not rest upon the mere allegations or denials of that party's pleading, but the adverse party's response, by affidavits or declarations or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue as to any material fact for trial."

C.      *Property tax exemptions for charitable institutions*

ORS 307.130(1) [6] exempts from ad valorem property taxation real property that is: 1) owned or being purchased by a qualifying charitable institution; and is 2) actually and exclusively occupied or used in the * * * benevolent [or] charitable * * * work" of the institution.  The statute provides in relevant part:

> "(2) Upon compliance with ORS 307.162, the following property owned or being purchased by * * * incorporated literary, benevolent, charitable or scientific institutions shall be exempt from taxation * * *:

> "(a)* * * only such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work carried on by such institutions."

ORS 307.130(2).

ORS 307.090 exempts from taxation "all property of the state and all public or corporate property used or intended for corporate purposes of the several counties, cities, towns, school districts * * * or municipal corporations in this state * * *."

Generally, all property located within Oregon is taxable.  See ORS 307.030 (footnote omitted).  "[I]t has long been the rule in Oregon that property is subject to taxation unless specifically exempted."  *Christian Life Fellowship, Inc. v. Dept. of Rev.*, 12 OTR 94, 96 (1991) (citing *Methodist Homes, Inc. v. Tax Com.*, 226 Or 298, 360 P2d 293 (1961)).

Oregon courts recognize that exemption provisions "should be strictly construed in favor of the state and against the taxpayer."  *North Harbour Corp. v. Dept. of Rev.(North Harbour)*, 16 OTR 91, 94-95 (2002) (citing *Mult. School of Bible v. Mult. Co. (Mult. School of Bible)*, 218 Or 19, 27, 343 P2d 893 (1959)).  That rule of construction "is paraphrased in later cases as 'strict but reasonable.' "  *Id.* (citing *Eman. Luth. Char. Bd. v. Dept. of Rev.(Eman. Luth.)*, 263 Or 287,

---

[6] The court's references to the Oregon Revised Statutes (ORS) are to 2011.

291, 502 P2d 251 (1972)).  Strict but reasonable construction "requires an exemption statute be construed reasonably, giving due consideration to the ordinary meaning of the words of the statute and the legislative intent."  *Id*. (citing *Mult. School of Bible*, 218 Or at 27-28).

In *North Harbour* this court quoted with approval the rule set forth in *Eman. Luth.*, that " * * * [s]trict but reasonable means merely that the statute will be construed reasonably to ascertain the legislative intent, but in case of doubt will be construed against the taxpayer." *Eman. Luth., 2*63 Or at 291.

D.     *Plaintiff's position*

Plaintiff makes three arguments for the grant of an exemption for the entirety of the subject property (the entire 10,000 square foot building).

Plaintiff first argues that a portion of the subject property was actually and exclusively used by Plaintiff "for storage of food and other goods and supplies used [by Plaintiff] in its charitable mission (food service and residential operations)."  (Ptf's Mot for Summ J at 3; Stip Facts at 5, ¶ 15.)  Plaintiff insists that its "use and occupation is continuous and active [and] * * * is directly related to [its] charitable food service and residential shelter operations."  (Ptf's Mot for Summ J at 3.)  Plaintiff next references several factual statements made by Arnold, Plaintiff's Food Services Manager, in his sworn declaration.  Arnold states that "Plaintiff's staff regularly access the Subject Property for deposit, removal and storage of food and other goods and supplies used in Plaintiff's charitable operations," and that "Plaintiff's operations require it to store large quantities of refrigerated and frozen food items and other goods and supplies for ready access," and that Plaintiff's "adjacent new building * * * does not have sufficient space and equipment for that purpose."  (*Id*.)  Plaintiff continues to build on its argument, again referencing the Arnold declaration for the assertion that, because of the activities described

immediately above, "Plaintiff [must] maintain continuous utility service to the entire building on the Subject Property for power, heat and lighting and water for fire sprinklers and for cleanup," which, in turn, requires "Plaintiff to continuously secure and monitor the Subject Property and to keep the fire sprinklers in the Subject Property continuously charged and maintained." (*Id*. at 3-4.)

D.      *Defendant's position*

It is the court's understanding from Defendant's cross-motion for summary judgment that Defendant is asking the court to uphold its Notification of Status Change that changed the subject property from 100 percent exempt to 100 percent taxable, or at most, granting Plaintiff an exemption on 11 percent of the subject property.  (Def's Resp and Cross-Mot for Summ J at 2-3, 5, 7.)

E.      *The court's opinion*

The court rejects Plaintiff's contention that the activities it conducted on the subject property in 2013 qualified the entire building for property tax exemption under ORS 307.130. The facts, taken both from the parties' stipulations and the Arnold declaration, only establish a partial use of the subject property.  Plaintiff has adequately shown that the basement and first floor of the subject property were "actually and exclusively occupied [and] used" by Plaintiff in its charitable work and qualify those portions of the building for exemption from property taxes under ORS 307.130(2)(a).  Those floors are therefore granted exemption.

The applicable exemption statute provides for partial exemption of a qualifying institution's property that is "actually and exclusively occupied or used" by the charitable institution.  ORS 307.130(2)(a) ("only such real or personal property, *or proportion thereof*,

/ / /

[that] is actually and exclusively occupied or used in the * * * charitable * * * work carried on by such institutions") (Emphasis added.)

As the Oregon Supreme Court stated in *Willamette Univ. v. Tax Com. (Willamette Univ.)*, 245 Or 342, 422 P2d 260 (1966), the term "exclusively used," found in ORS 307.130(2)(a) (formerly ORS 307.130 (1) [7]), refers to the "primary use made of the property, and its use for exemption purposes is measured by the reasonable applicability of the property to carry out the purposes of the exempt taxpayer." *Willamette Univ.*, 245 Or at 344-45 (*citing Mult. School of Bible,* 218 Or at 343). *Willamette Univ.* concerned the question of whether a building under construction and intended for use as student housing for the university qualified for exemption before the structure was completed. *Willamette Univ.*, 245 Or at 346-47. The Court held that it did qualify, ruling that "a building in the course of construction is being occupied and used for the purposes of the exempt corporation * * *[,]" because the line of cases it chose to follow were deemed by the Court to be "more reasonable and more in spirit with the purpose of the rule of strict but reasonable construction." (*Id.* at 347.)

The *Willamette Univ.* case appears to represent the outer limits for exemption of property under ORS 307.130. There was a strong dissent in the *Willamette Univ.* case by Justice O'Connell, who first stated that, accepting the rule of strict but reasonable construction, "[i]t follows that if the statute is susceptible to either of two constructions, each of which is reasonable, we must accept the construction which spells liability for the taxpayer." (*Id.* at 349.) After noting that the exemption statute requires actual and exclusive occupation or use of the property, "[i]t stretches the meaning of the terms of the statute to describe the process of

---

[7] Although the applicable language in ORS 307.130 (the exemption statute) in place at the time of the Court's decision in the *Willamette Univ.* case was found in subsection (1) of that statute, the operative language was identical to that now found in ORS 307.130(2)(a).

constructing a building as the actual and exclusive use or occupancy for the purposes specified."
(*Id.*) Finally, the dissent opined that "the word 'reasonable' is frequently used by courts to mean that construction which is the more reasonable of two feasible alternatives." (*Id.* at 350.)

The other end of the spectrum seems to be found in the *Eman. Luth.* case, where the plaintiff hospital had adopted a long-range master plan for expansion, but had not yet begun construction of the facilities. *Eman. Luth.,* 263 Or at 289. The court held that the vacant land was not exempt as charitable property, stating that "[a]ctual occupancy must mean as a minimum that the land be occupied by a building under construction." *Id.* at 292.

The court finds that Plaintiff's use in this case lies somewhere in the middle, being transitioned out of use and replaced by the new building Plaintiff constructed adjacent to the subject property. Portions of the property were used by Plaintiff for its charitable purposes and those portions, which the court finds consist of the basement and first floor, were sufficiently occupied and used by Plaintiff so as to qualify those areas for exemption under the statute.

However, the upper, unused and uninhabitable two floors of the building were not used for any purpose and the mere fact that Plaintiff protected the entire building from destruction by fire by maintaining a sprinkler system to protect those two floors is not sufficient, under the facts of this case, to qualify that portion of the building for exemption under ORS 307.130. Such activity is not sufficient to satisfy the statutory requirement of actual and exclusive occupation or use. Plaintiff does not contend there was any actual physical use or occupation of the second and third floors, and, in fact, acknowledges that the upper two floors of the building were not used for their designed and intended purpose, a purpose for which those floors were previously used for many years, which was to provide housing for the homeless. On the contrary, Plaintiff concedes there was no use, that the stairway access is difficult, there is no elevator, and that any

actual ongoing use of those floors is not possible both because of the age of the building and the present state of disrepair, which renders those areas unsafe, and creates a fire hazard. The fact that the water and power supply to the building service the entire building does not render those spaces exempt as a qualifying use for Plaintiff's charitable mission and operation of feeding, clothing, and providing shelter for Portland's homeless and poor population. The court does not dispute that the fire suppression system for the second and third floors was necessary to keep the entire building safe, and therefore served to protect the basement and first floor areas Plaintiff did use for the storage of food and supplies, etc. That system also made it safe for the employees and volunteers who routinely entered the building to deliver and retrieve food and other items for use in the new building adjacent to the subject property that Plaintiff used and occupied for the conduct of its charitable activities in 2013. However, the nexus is too tenuous to render those portions of the building (the second and third floors of the subject property) to be granted exemption from taxation under ORS 307.130.

Although the court believes it has correctly applied the governing statute to the facts of the case, concluding that the basement and first floor of the subject property qualify for exemption under ORS 307.130, there is one fact that, although not quite rising to the level of being characterized as "troubling," has caught the court's attention. The Arnold declaration raises the question of how Plaintiff intends to continue its operation if and when it loses the use of the subject property because, according to the facts, the newly constructed building has insufficient space to store all of the food and other supplies and items currently housed in the subject property. Plaintiff insists that the space in the subject property it currently uses to store some food and other items (in the first floor and basement) is both reasonably necessary because the space is needed, and such storage must be near enough to the new building to provide ready

access. Accordingly, the new building will either lack sufficient storage space for the food and other items, or Plaintiff will have to change its operations or find another nearby storage space, given that Arnold insists that Plaintiff needs ready access to those items. However, on the facts before it, the court is comfortable with its determination that the basement and first floor of the subject property qualify for exemption under ORS 307.130.

The court also rejects both of Plaintiff's two additional arguments for exemption of the entire building.

First, PDC's contractual option to purchase the subject property upon 30 days notice to Plaintiff and the payment of merely $1 is a voluntary encumbrance Plaintiff agreed to place on the subject property in exchange for $4 million in cash grants that Plaintiff used to construct its new facility. Contrary to Plaintiff's contention that the option is itself a qualifying use because the option "substantially contributes to the furtherance of Plaintiff's charitable goals and mission," the court finds that reasoning untenable, and is a misapplication of the case on which Plaintiff relies, *YMCA v. Dept. of Rev. (YMCA)*, 268 Or 633, 635, 522 P2d 464 (1974). (Ptf's Mot for Summ J at 4-5.) The issue in the *YMCA* case cited by Plaintiff was whether the use of the kitchen and cafeteria that served both members of the YMCA and the general public was "a convenience but not required by the primary goals of the plaintiff." *YMCA*, 268 Or at 635. The Supreme Court overturned this court, finding that "[t]he evidence in [that] case shows that plaintiff's food service implemented its objectives in a substantial way." (*Id.*) That is simply not the case with Plaintiff in the instant matter. *YMCA* is therefore inapposite.

Finally, Plaintiff argues that "PDC in effect has sole beneficial interest in the Subject Property[,]" because "PDC can acquire legal title" to the subject property upon 30 days notice and "payment of merely $1.00," and that contractual right gives PDC "equitable and constructive

ownership of the Subject Property." (Ptf's Mot for Summ J at 5-6.) Plaintiff asserts that "PDC has equitable and constructive ownership of the Subject Property," and that it "is merely holding legal title to the Subject Property for the benefit of PDC." (*Id*. at 6.) Accordingly, Plaintiff contends that the subject property qualifies for exemption under ORS 307.090(1), a statute that exempts from ad valorem taxation "all public or corporate property used or intended for corporate purposes of * * * municipal corporations in this state." (*Id*.)

Plaintiff's reliance on *Tillamook Community Foundation v. Dept. of Rev.(Tillamook Community Foundation)*, 11 OTR 130 (1989) is misplaced. The key distinction between that case and the present is that in *Tillamook Community Foundation*, the plaintiff held legal title to the subject property for the "exclusive benefit" of Tillamook Bay Community College Service District. Here, Plaintiff owns the property and gave a government entity an option to buy, but the property has not been deeded to PDC, and PDC has no obligation to exercise its option. Therefore, there is no equitable ownership here as there was in *Tillamook Community Foundation*.

The court's analysis set forth above effectively addresses Defendant's position that the subject property is either 100 percent taxable or at most 11 percent exempt. Defendant's attempt to limit any exemption to the actual physical space its representative found Plaintiff to be using overlooks the practical realities of the case, which are that Plaintiff's employees and volunteers regularly entered the subject property to bring donated food and other items into the building for storage and also removed that food and other items when needed for use in the new adjacent building Plaintiff was occupying in 2013. Certainly, if a building under construction qualifies for exemption when it is slated for a qualifying use by a qualifying institution, then the two floors of the subject property in which Plaintiff stored food and other donated items, and

accessed those items regularly, its employees and volunteers moving about on both the first floor and in the basement to accomplish that objective, are sufficiently occupied and used both actually and exclusively so as to entitle those portions of the subject property to exemption under ORS 307.130(2)(a).

## III.  CONCLUSION

The court has carefully considered the parties' cross-motions for summary judgment and concludes that the subject property qualifies for partial exemption under ORS 307.130.  The portions of the building that qualify for exemption are the basement and first floor of the subject property.  Defendant shall determine the total square footage encompassed by those two floors and accurately calculate the exemption accordingly.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's Motion for Summary Judgment is granted in part and Defendant's cross-motion for summary judgment is denied in accordance with the court's decision set forth above.

Dated this ____ day of June 2014.

_____
DAN ROBINSON
MAGISTRATE

*If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.*

*This Final Decision was signed by Magistrate Dan Robinson on June 5, 2014. The Court filed and entered this Final Decision on June 5, 2014.*