IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

|  |  |  |
|---|---|---|
| HABITAT FOR HUMANITY OF THE MID-WILLAMETTE VALLEY, | ) ) ) | |
| Plaintiff, | ) ) | TC-MD 130518C |
| v. | ) ) | |
| MARION COUNTY ASSESSOR, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| DEPARTMENT OF REVENUE, State of Oregon, | ) ) ) | |
| Defendant-Intervenor. | ) | **FINAL DECISION** |

The court entered its Decision in the above-entitled matter on July 22, 2014. The court did not receive a request for an award of costs and disbursements (TCR-MD 19) within 14 days after its Decision was entered. The court's Final Decision incorporates its Decision without change.

This matter is before the court on the parties' cross-motions for summary judgment. Plaintiff appeals Defendant's property tax exemption application denial dated August 26, 2013, for the 2103-14 tax year. A hearing on the motions was held in the Oregon Tax Courtroom on July 14, 2014, in Salem, Oregon. Gina Anne Johnnie, Attorney at Law, appeared on behalf of Plaintiff. Scott Norris, Marion County Legal Counsel, appeared on behalf of Defendant. Darren Weirnick (Weirnick), Assistant Attorney General, appeared for Defendant-Intervenor. The parties submitted stipulated Exhibits 1 to 4 with their stipulated facts.

/ / /

## I.  STATEMENT OF FACTS

The parties have agreed to the following stipulated facts:

"On or around September 14, 2012, [Plaintiff] acquired real property located at 1008 Alexis Lane, Keizer, Oregon (the 'Property'), which is listed in the County's property tax records as account number R346608."  (Stip Facts at 1, ¶ 2.)

"At all relevant times since [Plaintiff's] acquisition of the Property, the Property has been zoned for single-family residential use."  (Stip Facts at 2, ¶ 3.)

"On or about September 26, 2013, [Plaintiff] applied for a building permit to construct a residential dwelling on the Property."  (Stip Facts at 2, ¶ 4.)

"On or about October 17, 2013, [Plaintiff] obtained a building permit from Marion County to begin construction of a residential dwelling on the Property."  (Stip Facts at 2, ¶ 5.)

"From [the time of] [Plaintiff's] acquisition of the Property on September 14, 2012, until the issuance of a building permit on or about October 17, 2013, the Property consisted of vacant land."  (Stip Facts at 2, ¶ 6.)

"[Plaintiff] receives its revenues primarily from donations, loan repayments from its approved buyers, and sales of reusable building materials and home furnishings."  (Stip Facts at 2, ¶ 7.)

Stipulated Facts at 2, ¶ 8 includes the following:

"Solely for purposes of each party's motion for summary judgment, defendants do not contest [Plaintiff's] assertions that:

"a. [Plaintiff] is an incorporated charitable institution within the meaning of ORS 307.130;

/ / /

"b. [Plaintiff] uses volunteer labor to build affordable residential homes that [Plaintiff] thereafter sells at below-market prices to qualified applicants, who must meet certain requirements that include, but are not limited to, a need for adequate housing and an income level between [an established range of adjusted median income for the area].

"c. To accomplish the purposes stated in its articles of incorporation, [Plaintiff] may acquire vacant land for future use to build affordable housing.

"d. [Plaintiff] often serves as the lender on homes at sells to approved low-income families, and such loans are at no interest.

"e. [Plaintiff] acquired the Property for the sole purpose of later building a residential home on the Property using volunteer labor and selling it to a low-income family at a price below market. From the time of acquisition to the present, [Plaintiff] has had no other intention with respect to the Property.

"f. [Plaintiff] has not leased the Property to a third party since acquiring the Property and has no intention of doing so.

"g. [Plaintiff] began construction of a residential home on the Property after issuance of the building permit on October 17, 2013, and currently anticipates it will complete construction of the dwelling on or before June 30, 2014."

"[Plaintiff] applied for exemption of the Property for the 2013-14 tax year, asserting exemption under ORS 307.130. In its application, [Plaintiff] described the purpose of the organization as '[p]rovide families w/ low income housing.' In response to the instruction to '[d]escribe how you will use the property * * *,' [Plaintiff] answered 'low income housing.' "
(Stip Facts at 3, ¶ 9.)

/ / /

"On August 26, 2013, the County denied [Plaintiff's] application." (Stip Facts at 3, ¶ 10.)

## II. ANALYSIS

A. *Summary judgment*

This matter is before the court on cross-motions for summary judgment. Tax Court Rule (TCR) 47 governs summary judgment motions.[1] That rule affords either party the opportunity to file a motion for summary judgment "in that party's favor upon all or any part" of "a claim, counterclaim, or cross-claim," and permits motions to be filed "with or without supporting affidavits or declarations." TCR 47 A.

Under TCR 47, either party may file a motion for summary judgment. TCR 47 A. The court is required to grant the motion where "the pleadings, * * * declarations, and admissions on file show" two things: first, "that there is no genuine issue as to any material fact[,]" and second, "that the moving party is entitled to prevail as a matter of law." TCR 47 C.[2] That rule further provides that no genuine issue as to any material fact exists if the court concludes that "no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." *Id*.

/ / /

/ / /

---

[1] The court's references to the Oregon Tax Court Rules (TCRs) are to those in effect on January 1, 2014.

[2] Relevant portions of TCR 47 provide:

"C. * * * The court shall grant the motion if the pleadings, depositions, affidavits, declarations, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law. No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment. The adverse party has the burden of producing evidence on any issue raised in the motions as to which the adverse party would have the burden of persuasion at trial."

The parties stipulated to the material facts and there are none in dispute. The court need only decide if either party is entitled to prevail as a matter of law.

B.  *ORS 307.130 property tax exemption*

Generally, all property located within Oregon is taxable. *See* ORS 307.030 (footnote omitted).[3] "[I]t has long been the rule in Oregon that property is subject to taxation unless specifically exempted." *Christian Life Fellowship, Inc. v. Dept. of Rev.*, 12 OTR 94, 96 (1991) (citing *Methodist Homes, Inc. v. Tax Com.*, 226 Or 298, 360 P2d 293 (1961)).

ORS 307.130(2) exempts from taxation property owned by charitable institutions provided the property "is actually and exclusively occupied or used in the * * * charitable * * * work carried on by [the] institutions[]." ORS 307.130(2)(a). This case focuses on the second of those two requirements; the actual and exclusive occupation or use of the Property.

Oregon courts recognize that exemption provisions "should be strictly construed in favor of the state and against the taxpayer." *North Harbour Corp. v. Dept. of Rev.(North Harbour)*, 16 OTR 91, 94-95 (2002) (citing *Mult. School of Bible v. Mult. Co. (Mult. School of Bible)*, 218 Or 19, 27, 343 P2d 893 (1959)). "That rule of construction is paraphrased in later cases as 'strict but reasonable.'" *Id*. (citing *Eman. Luth. Char. Bd. v. Dept. of Rev.(Emanuel Lutheran)*, 263 Or 287, 291, 502 P2d 251 (1972). Strict but reasonable construction "requires an exemption statute be construed reasonably, giving due consideration to the ordinary meaning of the words of the statute and the legislative intent." *Id*. (citing *Mult. School of Bible*, 218 Or at 27-28).

In *North Harbour* this court quoted with approval the rule set forth in *Emanuel Lutheran*, that " * * * [s]trict but reasonable means merely that the statute will be construed reasonably to

/ / /

---

[3] The court's references to the Oregon Revised Statutes (ORS) are to the 2011 edition.

ascertain the legislative intent, but in case of doubt will be construed against the taxpayer."

*Emanuel Lutheran,* 263 Or at 291.

As the Oregon Supreme Court stated in *Willamette Univ. v. Tax Com. (Willamette Univ.)*, 245 Or 342, 422 P2d 260 (1966), the term "exclusively used," found in ORS 307.130(2)(a) (formerly ORS 307.130 (1) [4]), refers to the "primary use made of the property, and its use for exemption purposes is measured by the reasonable applicability of the property to carry out the purposes of the exempt taxpayer." *Willamette Univ.*, 245 Or at 344-45 (*citing Mult. School of Bible,* 218 Or 19). *Willamette Univ.* concerned the question of whether a building under construction and intended for use as student housing for the university qualified for exemption before the structure was completed. *Willamette Univ.*, 245 Or at 346-47. The Court held that it did qualify, ruling that "a building in the course of construction is being occupied and used for the purposes of the exempt corporation * * *[,]" because the line of cases it chose to follow were deemed by the court to be "more reasonable and more in spirit with the purpose of the rule of strict but reasonable construction." *Id*. at 347. The Court in *Willamette Univ.* concluded its majority opinion with the following language:

> "We are of the opinion that the better rule is found in the opinions of the courts which have carefully considered the issue and reached the conclusion that 'actually occupied and used' pertains to *whether or not the premises are then being prepared to carry out purposes of the exempt charity* and if they are they fall within the legislative intent."

*Id*. at 349 (emphasis added).

/ / /

/ / /

---

[4] Although the applicable language in ORS 307.130 (the exemption statute) in place at the time of the Court's decision in the *Willamette Univ.* case was found in subsection (1) of that statute, the operative language was identical to that now found in ORS 307.130(2)(a).

The *Willamette Univ.* case appears to represent the outer limits for exemption of property under ORS 307.130. The Oregon Supreme Court stated as much in another exemption case it decided six years later. In *Emanuel Lutheran*, 263 Or at 292, the court stated:

> "We agree with the Tax Court that *land merely being held for future use is not being actually occupied or used* for the benevolent or charitable work carried on by plaintiff."

(Emphasis added.)

The *Emanuel Lutheran* case involved a plaintiff hospital that began acquiring property in the vicinity of its hospital in 1957, and "in 1967 adopted a long-range master plan for future expansion." 263 Or at 288-89. "Pursuant to the master plan plaintiff intended to use the real property involved * * * for an addition to its main hospital * * *." *Id*. at 289. The state taxing authority conceded that the buildings planned for construction would be tax exempt once they were erected. *Id*. The hospital sought exemption under ORS 307.130, relying on *Willamette Univ*., and urging the court to extend its holding "to include vacant land held for future use in tax exempt activities, but on which building of facilities has not yet begun." *Id*. at 290. The court declined the invitation to extend the holding in *Willamette Univ*., and held that the hospital's vacant land was not exempt as charitable property. The court in *Emanuel Lutheran* stated:

> "[b]y requiring that exempt property be actually occupied for charitable or other exempt purposes the legislature must have meant something more than mere ownership or even ownership with and intent to put the land to an exempt use in the future. *Actual occupancy must mean as a minimum that the land be occupied by a building under construction*."

263 Or at 292 (emphasis added).

Plaintiff asserts that it is a charitable institution within the meaning of ORS 307.130, and that to fulfill its mission, it purchases land which it later resells after building a home to be sold to a low-income family at a price below market. (Ptf's Mot at 2.) Plaintiff's representative

argued during the hearing that it is important to note that Plaintiff does not operate homes for the needy, but rather sells them. (Aff of Ambris at 2, ¶ 6.) "[Plaintiff's] organizational purpose is to acquire, develop, and then sell residential real property to low income families * * *." (*Id*.) "The first step in fulfilling its mission is to acquire property[,]" and, according to Plaintiff, such acquisition is an integral part of its purpose. (Ptf's Mot at 2; Aff of Ambris at 2-3, ¶¶ 6, 9.)

Plaintiff argues that the subject property was actually and exclusively occupied or used in its charitable work because Plaintiff's "tax exempt activities *include* purchasing property," and "purchasing property IS [Plaintiff's] charitable use." (Ptf's Reply at 2-3)(emphasis in original).)

Plaintiff distinguishes itself from *Emanuel Lutheran*, arguing that, although its overall charitable purpose, as set forth in its Revised Articles of Incorporation, involves acquiring property, that was not the case with the hospital in *Emanuel Lutheran*, which, over a period of years, bought some property adjacent to a hospital it was already operating, with a plan to develop the property for its charitable purposes. (Ptf's Mot at 5.) In distinguishing *Emanuel Lutheran*, Plaintiff rejects Defendant's argument "that [a] hospital's mission or charitable goal is to purchase property," insisting, instead, that "its charitable mission is to operate a hospital." (Ptf's Reply at 3.) It is not clear to the court whether Plaintiff or Defendant has the correct characterization of the hospital's mission in *Emanuel Lutheran*, but the court need not resolve that question because the issue in this case is actual use or occupancy, and therefore an organization's stated purpose is not controlling in determining if an institution's property is "actually and exclusively occupied or used in the * * * charitable * * * work carried on by [the] institution." ORS 307.130(2)(a).

Defendants rely primarily on the Oregon Supreme Court's opinion in *Emanuel Lutheran*. (Def-Intervenor's Cross-Mot for Summ J at 2.) Defendant-Intervenor insists that the court's

holding "that bare land owned by a religious charity for future use in a planned expansion of the charity's nearby hospital was not property 'actually * * * occupied or used' in the organization's charitable work," is "dispositive here." (*Id*.) Defendant notes that Plaintiff in this appeal was "merely [holding] the Property as vacant land for future use and that Plaintiff had not begun construction of improvements." (*Id*.)

Defendant-Intervenor insists that there is no relevant distinction under the statute between the facts in *Emanuel Lutheran* and the present case, describing the former case as one involving "a charity that acquires bare land for future expansion of a charitable hospital," and Plaintiff as "a charity that acquires bare land for future construction and the sale of low-income housing." (*Id*. at 3.) The taxpayer in *Emanuel Lutheran* owned and operated a hospital on a piece of land and at some point acquired an adjoining parcel to expand its facility. There is no indication that the taxpayer in *Emanuel Lutheran* was continually buying land and building hospitals, whereas Plaintiff here does continually buy land, build houses, and then sell them. The court probed that factual distinction with Defendant-Intervenor's representative during oral argument. In response, Weirnick cautioned the court not to go beyond the limits of *Willamette Univ.*, stating that if the court granted Plaintiff's request for exemption in the present matter, Plaintiff (or another otherwise qualifying organization) would theoretically be entitled to exemption on a large parcel of land it bought and intended to subdivide and develop at some future point in time, even though some of the parcels may never be developed and sold. Plaintiff in this case bought the Property in September 2012 and did not apply for a building permit until October 2013.

It bears mention that the Tax Court's opinion in *Emanuel Lutheran Char. v. Dept. of Rev. (Emanual Lutheran II)*, 4 OTR 410, 425 (1971), aff'd by *Emanuel Lutheran,* 263 Or 287, noted concern for the very situation theorized by Weirnick during oral argument. The Tax Court in

*Emanuel Lutheran II* noted that in a Colorado case, *El Jebel Shrine Ass'n v. McGlone*, 93 Colo 334, 26 P2d 108 (1933), the court "allowed El Jebel an exemption 16 years before" and the property remained unused for any purpose, though it continued to enjoy exemption from taxes, "the original intent long obscured." 4 OTR at 425.

The court finds that this case can be decided based on the holdings of the Oregon Supreme Court in *Willamette Univ.* and *Emanuel Lutheran.* In the former, the court granted exemption for buildings (student housing units) under construction, stating that it "prefer[red] to follow the cases from jurisdictions which hold that a building in the course of construction is being occupied and used for the purposes of the exempt corporation * * *." *Willamette Univ.*, 245 Or at 346-47. In subsequently rejecting the taxpayer's request for exemption in *Emanuel Lutheran*, a case where the taxpayer acquired property for future expansion of its hospital but had not yet begun construction thereon, the court ruled that "[a]ctual occupancy must mean as a minimum that the land be occupied by a building under construction." 263 Or at 292.

The legislature knows how to grant exemptions for intended as opposed to actual uses. For example, ORS 307.090(1) exempts from taxation "all property of the state * * * used or *intended* for corporate purposes," whereas ORS 307.130(2)(a) exempts property that is actually used for charitable purposes. (Emphasis added.) And, as Defendant-Intervenor notes in its Cross-Motion for Summary Judgment, "ORS 307.115(1)(a) allows exemption of property 'actually and exclusively occupied or used for public park or public recreation purposes,' while ORS 307.115(1)(b) separately permits exemption of property that is merely '*held* for public parks or public recreation purposes' so long as the property is not used for commercial purposes, [etc.]." (Def-Intervenor's Cross-Mot for Summ J at 8-9) (emphasis added).) A plain and

/ / /

reasonable reading of ORS 307.130(2) reveals that the legislature did not intend to afford exemption for future intended uses.

As the court noted in *Emanuel Lutheran*:

> "*In construing* the exemption granted by *ORS 307.130* in *Willamette Univ. to include a building under construction we went to the limit* of a strict but reasonable construction. Any further extension must be made by legislative action and not by judicial construction."

*Emanuel Lutheran*, 263 Or at 292. (emphasis added).

Plaintiff contends that a controlling case in this matter is a prior decision of this court involving a different "Habitat affiliate" with very similar facts. That case is *Habitat for Humanity Mt. Angel Area, Inc. v. Marion County Assessor*, TC-MD No 020065E, WL 25846519 (Jan 30, 2003) (*Habitat Mt. Angel*). (Ptf's Mot at 4.) Plaintiff insists that the parcel in both cases was used for charitable purposes. (*Id.*)

In *Habitat Mt. Angel*, the court found that "under the facts of this case, acquiring bare land qualifies the properties for exemption because acquiring property is a necessary part of Plaintiff's charitable activities." WL 25846519 at *2. In so ruling, the court in *Habitat Mt. Angel* noted that the Supreme Court in *Emanuel Lutheran* had stated that "[b]y requiring that exempt property be actually occupied for charitable or other exempt purposes the legislature must have meant something more than mere ownership or even ownership with an intent to put the land to an exempt use in the future." *Id.* However, after observing that such language would "appear[] to support the conclusion that the subject property is not entitled to exemption[,]" the court then stated that plaintiff's charitable purpose in *Emanuel Lutheran* "was 'a general hospital which also provide[d] teaching and research[ing] services,' " and that "[a]cquiring property had no place in the plaintiff's overall charitable purpose." *Id.* The court later indicated that the

///

*Habitat Mt. Angel* case was "unique * * * because, typically, acquiring property is not an inherent part of a charitable organization's purpose." *Id.*

Plaintiff's reliance on *Habitat Mt. Angel* is understandable and appealing, and could provide a basis for ruling in its favor. However, as the court noted in *North Harbour*, "[t]he 'strict but reasonable' rule serves as a tie breaker, in favor of taxation, where no legislative intent can be discerned." 16 OTR at 95. And, as this court has noted above, it is apparent that in enacting ORS 307.130(2) the legislature intended to grant property tax exemption to qualifying institutions and organizations that have, as a minimum, begun construction on the subject property. It must be remembered that the claimant of an exemption is required to bring itself within the terms of the statute. *See Mercy Medical Center, Inc. v. Dept. of Rev.*, 12 OTR 305 (1992).

The court concludes that the Oregon Supreme Court drew a clear line between future or intended use versus actual present use within the context of ORS 307.130 in *Willamette Univ.* and *Emanuel Lutheran*; at a minimum, there must be a building under construction.

Judge Roberts' decision in the Oregon Tax Court's ruling in *Emanuel Lutheran II* puts to rest Plaintiff's argument that the acquisition of vacant land is necessary to fulfill its charitable mission, and that such stated necessity qualifies the property for exemption. After looking at three specific words in the statute (ORS 307.130): actual, occupy, and use, Judge Roberts wrote:

> "These words cannot be easily adopted with reference to an idle piece of land which, at some time in the future, is to be utilized to carry on the work of the exempt institution. The legislature knows how to grant flat exemptions from taxation; see ORS 307.320 and 307.325. It is patent that this has not been done under ORS 307.130. The property of nongovernmental charitable institutions must conform to certain prerequisites, no matter how worthy the institution's purposes may be. Matters of degree become important and lines must be drawn,

> / / /

if the legislative intent is to be fulfilled. The legislature, under ORS 307.130, contends that the area of exemption cease at a particular point, and that point must be discovered by the court, if possible. *Willamette Univ. * * * carries us to a specific bricks-and-mortar point.*

"* * * * *

"It is essential, for good tax administration, that guideposts be set up and lines so drawn that tax administrators, assessors, appraisers and taxpayers will be able to act with reasonable certainty under the statute. The act approved in *Willamette Univ. * * ** provides for a sufficient guide; that is, there was a patent physical change in the property to be exempt by starting actual construction of an improvement, to be used and occupied for the purposes for which the exempt organization was established. Anything less, because of unsettled, inchoate, obscure or latent aspects * * * would be futile and increase litigation."

*Emanuel Lutheran II*, 4 OTR at 422-24 (second emphasis added), aff'd by *Emanuel Lutheran,* 263 Or 287.

### III. CONCLUSION

The court has carefully considered the matter and finds that Plaintiff's failure to make any actual use of the Property by commencing construction of a residence prior to July 1, 2013, does not meet the statutory requirement in ORS 307.130(2)(a) that the property be "actually and exclusively occupied or used in the * * * charitable * * * work carried on by [Plaintiff]." Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's Motion for Summary Judgment is denied and Defendant-Intervenor's Cross-Motion for Summary Judgment is granted.

Dated this ⎯⎯ day of July 2014.

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
DAN ROBINSON
MAGISTRATE

*If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR Your Complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.*

*This Final Decision was signed by Magistrate Dan Robinson on August 8, 2014.*
*The Court filed and entered this Final Decision on August 8, 2014.*

*This Final Decision was signed by Magistrate Dan Robinson on August 8, 2014.*
*The Court filed and entered this Final Decision on August 8, 2014.*

FINAL DECISION  TC-MD 130518C                                                14